**BEASON v. N.C. DEP'T OF SEC'Y OF STATE**

[226 N.C. App. 222 (2013)]

DONALD R. BEASON, Petitioner
v.
NORTH CAROLINA DEPARTMENT OF THE SECRETARY OF STATE, Respondent

No. COA12-838

Filed 2 April 2013

1.  **Appeal and Error—interlocutory orders and appeals—lobbying enforcement—substantial right**

    Respondent's appeal was from an interlocutory order but immediately appealable because a substantial right was affected where respondent investigated petitioner's lobbying activities and issued fines, and the matter proceeded through administrative hearings to the superior court, where the fines were set aside. Petitioner's constitutional claim was still pending, but immediately appealable because respondent was charged with investigating violations of and enforcing the lobbying laws and respondent's ability to carry out its duties required that it be able to act timely on allegations it believed constituted violations.

2.  **Administrative Law—lobbying statutes—interpretation—authority**

    The trial court properly found that respondent Department of the Secretary of State did not have the power to interpret the lobbying laws, which rests solely with the Ethics Commission, although the Department of the Secretary of State has some power to administer certain parts of the law.

3.  **Administrative Law—lobbying statutes—imputed liability**

    Respondent-Secretary of State improperly construed the definition of "lobbying" to find violations based on "coordinated efforts" or "acting in concert" with another. Respondent only contended that petitioner engaged in lobbying as defined in N.C.G.S. § 120C-100(a)(9)a; the language and intent of the legislature is unambiguous, and respondent did not have room to construe the statute and find violations of the lobbying laws based on imputed liability.

4.  **Administrative Law—lobbying—definition—two prongs**

    A trial court decision on whether petitioner's activities constituted lobbying was reversed and remanded where the trial court did not consider both prongs of the definition of "lobbying" found in N.C.G.S. § 120C-100(a)(9)(a).

BEASON v. N.C. DEP'T OF SEC'Y OF STATE

[226 N.C. App. 222 (2013)]

Appeal by respondent from order entered 6 January 2012 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 8 January 2013.

*Bailey & Dixon, LLP, by Sabra J. Faires, Michael L. Weisel, and Adam N. Olls, and Allen, Pinnix & Nichols, P.A., by M. Jackson Nichols, Anna Baird Choi, and Catherine E. Lee, for petitioner-appellee.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Daniel Snipes Johnson and Assistant Attorney General Melissa H. Taylor, for respondent-appellant.*

HUNTER, Robert C., Judge.

Respondent the North Carolina Department of the Secretary of State appeals the trial court's order reversing and setting aside the civil fine assessment imposed against petitioner Donald Beason. After careful review, we affirm in part and reverse and remand in part the trial court's order.

This case involves the lobbying efforts of petitioner to repeal or amend N.C. Gen. Stat. § 136-28.7 (2011), commonly known as the "Buy America" law, which prohibits the North Carolina Department of Transportation from purchasing or using foreign-made steel and iron in highway construction projects. Petitioner was a registered lobbyist in North Carolina from 1993 until 2007. His son, Mark Beason ("Mark"), has been a registered lobbyist since 1999. Between late 2006 and August 2007, Mark worked for petitioner at Beason Government Affairs (BGA), a lobbying firm operated by petitioner. Respondent and the North Carolina Ethics Commission are the administrative agencies statutorily charged with enforcing and administering Chapter 120C of the North Carolina General Statutes (the "lobbying laws"). N.C. Gen. Stat. § 120C-600 and § 120C-601 (2011).

In late 2006, Sigma, a New Jersey corporation that imports and sells foreign manufactured cast iron and steel products in the United States, and petitioner discussed the possibility of BGA lobbying on behalf of Sigma and/or the Engineering Export Promotion Council ("EEPC"), an Indian trade association for exporters of iron products from India. During those discussions, Sigma requested that petitioner send a proposal for lobbying services so that Sigma could forward it to EEPC. Petitioner sent a proposal indicating that he, Mark, and T. Jerry Williams

("Mr. Williams"), an independent contractor of BGA, would perform lobbying services for EEPC. In December 2006, EEPC sent petitioner an unsigned agreement that incorporated the proposal. Petitioner signed his name and Mark's name on the proposed contract and returned it to Sigma for EEPC to sign. EEPC refused to execute the contract.

In February 2007, Sigma executed a contract with BGA. The contract stated that petitioner, Mark, and Mr. Williams would lobby on behalf of Sigma and be paid $95,000 plus expenses. Documents obtained by respondent during its investigation indicate that five companies engaged in importing and selling iron products—specifically, EEPC; Star Pipe Products ("Star"); General Foundries, Inc. ("GF"); Serampore Industries Products (Ltd.) Inc. ("SIP"); and Capitol Foundry of Virginia ("Capitol")—agreed to reimburse Sigma for its contract with BGA. It is not definitively established whether petitioner was aware of the agreement between Sigma and the five other companies. After executing the contract, both Mark and Mr. Williams lobbied on behalf of Sigma to repeal the "Buy America" law. Petitioner, Don, and Mr. Williams all registered with respondent as lobbyists for Sigma.

In March 2007, in response to safety concerns of Indian iron products, petitioner attended a meeting in Washington, D.C. with Sigma representatives, EEPC, and various other representatives of companies involved with exporting Indian Steel. Mark and Mr. Williams were not aware of this meeting.

In 2007, respondent initiated an investigation into the lobbying activities of petitioner and Mark. On 29 March 2010, respondent issued a civil fine assessment against petitioner for nine alleged violations of the lobbying laws and administrative rules. In the civil fine, respondent noted that it was based on petitioner's "coordinated efforts" on behalf of Sigma and five unregistered lobbyist principals and his "acting in concert" with numerous individuals and business entities in his lobbying efforts. Respondent fined petitioner $111,000.[1]

Respondent also fined Mark for three alleged violations of the lobbying laws. Mark's fine totaled $6000.

On 15 April 2010, because they were both fined by respondent, petitioner and Mark filed a joint petition for contested case hearing with the

---

1. We note that the amount of this fine, specifically the enhancement of petitioner's fine based on aggravating factors, is discussed in a separate case, *Donald R. Beason v. The N.C. Dep't of the Sec'y of State*, __ N.C. App. __, __ S.E.2d __ (No. COA 12-874) (April 2, 2013), filed contemporaneously with this opinion.

Office of Administrative Hearings appealing their civil fine assessments. The matter came on for hearing on 30 August 2010, and Administrative Law Judge Fred G. Morrison, Jr. ("ALJ Morrison") issued his Decision ("ALJ Decision") on 22 November 2010. Relying on the definition of lobbying in N.C. Gen. Stat. § 120C-100(a)(9)[2], ALJ Morrison concluded that "[t]he activities of Don Beason, Mark Beason, and T. Jerry Williams during 2007 to seek repeal or amendment of the 'Buy America' law constituted lobbying." Because petitioner failed to register as lobbyist for EEPC, failed to disclose to designated individuals that he was lobbying on behalf of EEPC, and failed to file lobbyist reports as a lobbyist for EEPC, the ALJ Decision upheld the civil assessment against petitioner in a modified amount of $6000.[3]

Petitioner filed a Petition for Judicial Review, including a North Carolina Constitutional Claim, in Wake County Superior Court on 8 March 2011. On 8 April 2011, respondent issued its Final Agency Decision, affirming in part and modifying in part the ALJ Decision. The Final Agency Decision adopted the conclusion, made by ALJ Morrison, that petitioner's "activities" constituted lobbying. Moreover, respondent concluded that the "joint lobbying activities of Don Beason . . . as defined by N.C. Gen. Stat. § 120C-100(a)(9)" violated N.C. Gen. Stat. § 120C-200(e), § 120C-200, and § 120C-402 for failing to file lobbyist reports for, failing to disclose he was a lobbyist for, and failing to register as a lobbyist for five undisclosed principals. The undisclosed principals included EEPC, Capitol, GF, SIP, and Star. Thus, the civil fine assessment against petitioner was affirmed in a modified amount of $30,000 ($2000 fine per violation per undisclosed principal).

In response to the Final Agency Decision, petitioner filed an Amended Petition for Judicial Review ("Amended Petition"), which also included a North Carolina Constitutional Claim, in Wake County Superior Court on 2 May 2011. In response to various discovery motions and respondent's motion to dismiss petitioner's constitutional claim in his Amended Petition, the trial court issued an order deferring ruling on the discovery motions, staying discovery, and staying petitioner's constitutional claim. The trial court also dismissed petitioner's 8 March 2011 Petition for Judicial Review because petitioner's Amended Petition was the matter currently pending before the trial court.

2. We note that ALJ Morrison cites to N.C. Gen. Stat. § 120C-100(a)(10) when quoting the definition of "lobbying." However, the definition of "lobbying" is found in section 100(a)(9).

3. In contrast to respondent, ALJ Morrison concluded that petitioner only violated three statutes and that the only undisclosed principal was EEPC.

On 5 December 2011, petitioner's Amended Petition came on for hearing. On 6 January 2012, Judge Ridgeway issued a Memorandum of Decision and Order ("order"), reversing and setting aside the civil fine assessment against petitioner. Specifics of the order will be discussed as they relate to respondent's arguments on appeal. Respondent appealed the order on 3 February 2012. On 23 August 2012, petitioner filed a motion to dismiss the appeal.

### Grounds for Appeal

[1] As an initial matter, we must determine whether respondent's appeal is interlocutory. Petitioner claims that the appeal is interlocutory because the order did not resolve all of his claims for relief, specifically, his constitutional *Corum* claim.[4] Therefore, the order was not a final order, and the appeal should be dismissed.

"Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381, *rehearing denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). There is no evidence in the record that the trial court addressed petitioner's *Corum* claim besides its order staying it. Since petitioner's *Corum* claim is still pending, the trial court's order did not fully dispose of petitioner's case. Thus, we must conclude that petitioner's appeal is interlocutory.

However, an interlocutory appeal is immediately appealable if it involves a substantial right. *Sharpe v. Worland*, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999). To determine if an appeal involves a substantial right, "[e]ssentially a two-part test has developed—the right itself must be substantial and the deprivation of that substantial right must potentially work injury . . . if not corrected before appeal from final judgment." *Goldston*, 326 N.C. at 726, 392 S.E.2d at 736.

We conclude that since respondent is charged with investigating violations of and enforcing Articles 2, 4, and 8 of the lobbying laws pursuant to N.C. Gen. Stat. § 120C-600 (a-b), respondent's right to carry out

---

4. In *Corum v. Univ. of N.C.*, 330 N.C. 761, 785-86, 413 S.E.2d 276, 291-92, rehearing denied, 331 N.C. 558, 418 S.E.2d 664 (1992), our Supreme Court concluded that, under specific circumstances, a plaintiff may bring a direct claim under our state constitution in the absence of an adequate state remedy and that sovereign immunity does not bar these claims.

these duties is substantial. Moreover, respondent's ability to carry out its duties requires that it be able to act timely on allegations it believes constitute violations. The substantial basis of this appeal involves the trial court's order concluding that the alleged violations respondent fined petitioner for were not actually violations. In other words, the trial court found that respondent was improperly interpreting statutes it is responsible for enforcing. Thus, we conclude that respondent suffers the risk of injury if we do not consider the merits of this interlocutory appeal. Therefore, we deny petitioner's motion to dismiss.

### Standard of Review

Pursuant to N.C. Gen. Stat. § 150B-51(b) (2009)[5], a trial court reviewing a decision of an agency

> may affirm the decision of the agency or remand the case to the agency or to the administrative law judge for further proceedings. It may also reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B–29(a), 150B–30, or 150B–31 in view of the entire record as submitted; or
>
> (6) Arbitrary, capricious, or an abuse of discretion.

The trial court's review of respondent's 8 April 2011 Final Agency Decision is governed by N.C. Gen. Stat. § 150B-51(c) (2011), which states:

---

5. We note that N.C. Gen. Stat. § 150B-51 was modified by Session law in 2011. *See* 2011 N.C. Sess. Laws ch. 398, sec. 27 (2011). However, the modifications were not effective until 1 January 2012. Since the Final Agency Decision was issued 8 April 2011 and petitioner's Amended Petition was filed 2 May 2011, the trial court's review is governed by the version of N.C. Gen. Stat. § 150B-51 in effect prior to 1 January 2012.

> In reviewing a final decision in a contested case in which an administrative law judge made a decision, in accordance with G.S. 150B–34(a), and the agency does not adopt the administrative law judge's decision, the court shall review the official record, de novo, and shall make findings of fact and conclusions of law. In reviewing the case, the court shall not give deference to any prior decision made in the case and shall not be bound by the findings of fact or the conclusions of law contained in the agency's final decision. The court shall determine whether the petitioner is entitled to the relief sought in the petition, based upon its review of the official record.

Our standard of review of a trial court's order reviewing a final agency decision is well-established:

> On appeal from a trials court's review of a final agency decision, an appellate court's task is to examine the trial court's order for error of law by (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) determining whether the court did so properly.

*Bulloch v. N.C. Dep't of Crime Control & Pub. Safety*, __ N.C. App. __, __, 732 S.E.2d 373, 377, *disc. review denied and appeal dismissed*, __ N.C. __, __ S.E.2d __ (2012). "For errors alleged regarding violations of subsections 150B–51(b)(1) through (4), the appellate court engages in *de novo* review; for errors alleged regarding violations of subsections 150B–51(b)(5) or (6), the 'whole record test' is appropriate." *Id.* Here, the trial court stated that it reviewed the matter *de novo*. Respondent does not allege that the trial court applied the wrong standard of review, only that it applied it incorrectly. Therefore, we must determine whether the trial court applied its *de novo* review properly.

### Arguments

Respondent's overarching argument is that the trial court erred in concluding that respondent lacked authority to interpret the lobbying laws and find violations of those laws through the common law doctrine of "acting in concert." Respondent contends that since it is obligated to enforce the lobbying laws, it had implied powers to use a concerted effort theory to establish violations of the lobbying laws. There seems to be two basic issues that must be resolved with regard to respondent's first argument. The first issue is whether respondent had the authority to interpret the lobbying laws. The second is whether respondent properly

found that petitioner was a lobbyist for EEPC based on his "coordinated efforts" and "acting in concert" with others.

[2] With regard to the first issue, whether respondent had the authority to interpret the lobbying laws, we conclude that the trial court properly found that respondent did not have such authority. "[T]he responsibility for determining the limits of statutory grants of authority to an administrative agency is a judicial function for the courts to perform." *McDonald v. N.C. Dep't of Corr.*, __ N.C. App. __, __, 724 S.E.2d 138, 140, *disc. review denied*, __ N.C. __, 731 S.E.2d 146 (2012). "An administrative agency is a creature of the statute creating it and has only those powers expressly granted to it or those powers included by necessary implication from the legislature grant of authority." *Boston v. N.C. Private Protective Servs. Bd.*, 96 N.C. App. 204, 207, 385 S.E.2d 148, 150-51 (1989).

In concluding that respondent lacked the authority to interpret the lobbying laws, the trial court looked to N.C. Gen. Stat. § 120C-101(a) (2011), the statute setting out the rule-making responsibilities of the Ethics Commission and respondent. Respondent was required to adopt any rules, orders, and forms necessary to administer the provisions of Articles 2, 4, and 8 of the lobbying laws. *Id.* However, the Ethics Commission was responsible for adopting rules necessary to *interpret all provisions of the lobbying laws* and for adopting rules necessary to administer Articles 1, 3, 5, 6, and 7 of the lobbying laws. *Id.* (emphasis added). Based on this statute, the trial court concluded that: (1) the legislature delegated the authority to interpret the lobbying laws to the Ethics Commission; (2) any interpretation of the lobbying laws by respondent was "not entitled to traditional deference by the [c]ourt"; and (3) any interpretation by respondent that would expand the plain meaning of the lobbying laws or define terms would be beyond its statutory authority.

While respondent, in administering Articles 2, 4, and 8 of the lobbying laws, would have the implied power to determine whether certain actions constituted violations of those laws, the power to interpret the lobbying laws has been expressly granted to the Ethics Commission pursuant to N.C. Gen. Stat. § 120C-101(a). "In performing its function, the power of an agency to interpret a statute that it administers is limited by the actions of the legislature." *Charlotte-Mecklenburg Hosp. Auth. v. N.C. Dep't of Health & Human Servs.*, 201 N.C. App. 70, 72, 685 S.E.2d 562, 565 (2009). Here, the legislature has specifically stated that although respondent has the power to administer Articles 2, 4, and 8, respondent has no power to interpret any of the provisions of the lobbying laws.

The power to interpret rests solely with the Ethics Commission. Thus, the legislature has given respondent no power to interpret the statutes it is charged with administering. Therefore, we affirm the trial court's conclusion that respondent does not have authority to interpret the lobbying laws and that any interpretation by respondent that expands or defines terms in a way that conflicts with the plain language of the statutes would be outside its statutory powers.

Moreover, we note that "[a]lthough the interpretation of a statute by an agency created to administer that statute is traditionally accorded some deference by appellate courts," *Charlotte-Mecklenburg Hosp. Auth.*, 201 N.C. App. at 73, 685 S.E.2d at 565, respondent had no authority to interpret the statutes it was charged with administering. Thus, we also affirm the trial court's conclusion that the interpretation of the lobbying laws by respondent was "not entitled traditional deference."

**[3]** Next, we must determine whether respondent was authorized to find violations of the lobbying laws based on the common law doctrine of "acting in concert." In reviewing the lobbying laws, the trial court strictly construed them, concluding that they are penalty statutes. Statutes imposing penalties are to be strictly construed. *State v. Holmes*, 149 N.C. App. 572, 576, 562 S.E.2d 26, 30 (2002). "Statutes imposing penalties are similarly strictly construed in favor of the one against whom the penalty is imposed and are never to be extended by construction." *Winston-Salem Joint Venture v. City of Winston-Salem*, 54 N.C. App. 202, 205, 282 S.E.2d 509, 511 (1981). Respondent contends that the trial court erred in strictly construing the lobbying laws because, as a whole, they should not be considered penalty statutes, only the statutes in Article 6 entitled "Violations and Enforcement." However, the statutes in Articles other than Article 6 provide the basis for a penalty. Moreover, the statutes in Articles 2, 4, and 8 of the lobbying laws are specifically incorporated in N.C. Gen. Stat. § 120C-602(b), the statute authorizing respondent to "levy civil fines" for violations of statutes in those Articles. While the statutes in sections 200 and 400 are not *per se* penalty statutes, they allow the imposition of a fine or penalty under Article 6 of the lobbying laws. *See id.* Therefore, they constitute penalty statutes and must be strictly construed and in favor of petitioner. *See generally Winston-Salem Joint Venture*, 54 N.C. App. at 206, 282 S.E.2d at 511.

Strictly construing N.C. Gen. Stat. § 120C-100(a)(9), the statute that defines terms used in Articles 2, 4, and 8, we conclude that respondent improperly construed the definition of "lobbying" to find violations based on "coordinated efforts" or "acting in concert" with another. Pursuant to N.C. Gen. Stat. § 120C-100(a)(9) (2011), lobbying is defined as:

a. Influencing or attempting to influence legislative or executive action, or both, *through direct communication or activities* with a designated individual or that designated individual's immediate family.

b. Developing goodwill through communications or activities, including the building of relationships, with a designated individual or that designated individual's immediate family with the intention of influencing current or future legislative or executive action, or both.

(Emphasis added). Respondent only contended that petitioner engaged in "lobbying" as defined in subparagraph (a). The definition of lobbying at issue here specifically states that lobbying only includes direct communication or activities. Therefore, indirect communications, such as those that could be based on "acting in concert" or imputed liability, would not constitute lobbying. Here, the language and intent of the legislature is unambiguous, and respondent did not have room to construe the statute and find violations of the lobbying laws based on imputed liability. Thus, by doing so, respondent impermissibly expanded the definition of lobbying. We note that, as the trial court concluded, had the General Assembly wanted to include "indirect communication" in its definition of lobbying, it could have drafted the statute similar to Minnesota's statute which defines a lobbyist as an individual "engaged for pay or other consideration . . . for the purpose of attempting to influence legislative or administrative action, or the official action of a metropolitan governmental unit, by communicating *or urging others to communicate with public or local officials."* Minn. Stat. § 10A.01, subd. 21 (2005) (emphasis added). Similarly, Mississippi defines "lobbying" as "(i) [i]nfluencing or attempting to influence legislative or executive action through oral or written communication; or (ii) *[s]olicitation of others to influence legislative or executive action."* Miss. Code Ann. § 5-8-3 (2002) (emphasis added). However, here, our General Assembly did not include such language in the definition of "lobbying." Therefore, the trial court did not err in concluding that respondent exceeded its statutory authority by extending the definition of lobbying.

[4] Next, respondent alleges that, as applied, the trial court's decision leads to absurd results. Specifically, respondent contends that "[t]he manifest purpose of the [lobbying laws] [are] to provide full and complete public disclosure of all lobbying activities and expenditures." By concluding that only "in person, face-to-face" communication constitutes lobbying, the trial court circumvents that purpose. While

respondent couches its argument in its overarching argument that the order "prohibits [respondent] from carrying out [its] statutory duties[,]" we conclude that the trial court's conclusion was erroneous for a different reason.

Here, the trial court concluded that

> in order for [p]etitioner to be a 'lobbyist,' as that term is defined by statute, he must have individually and personally 'lobbied,' which in turn requires that he have engaged in direct communication or activities with legislators, legislative employees, or public servants in an attempt to influence legislative or executive action, or both.

Because the trial court found that "[t]here is no evidence of record that petitioner personally engaged in direct communication with any designated individual[,]" he did not engage in lobbying. In fact, the trial court noted that "without a showing that [p]etitioner individually had direct communication with any designated individual, he was not a 'lobbyist' required to file a registration under plain meaning of the terms used in N.C. Gen. Stat. § 120C-200(a)." In other words, the trial court concluded that petitioner was not a lobbyist because he never directly communicated with any individual on behalf of EEPC, SIP, Star, Capitol, or GF.

Although respondent claims that the trial court's interpretation of "lobbying" is erroneous because it curtails the authority of respondent, we find that the trial court erred by not considering both prongs of the definition of "lobbying" found in N.C. Gen. Stat. § 120C-100(a) (9)(a). Specifically, lobbying can be effectuated by either influencing or attempting to influence legislative or executive action, or both, through: (1) direct communication, or (2) activities. While the trial court specifically quoted this definition, it only considered whether petitioner lobbied by engaging in direct communication. It failed to find whether the evidence supported a conclusion that petitioner lobbied based on his "activities," the second prong of the definition. Moreover, we note that both the ALJ Decision and respondent's Final Agency Decision concluded that petitioner's "activities" constituted lobbying.[6] While the trial court is not bound by these previous decisions, its failure to address both types of "lobbying" specifically stated in N.C. Gen. Stat. § 120C-100(a)(9) (a) was error. Therefore, we must reverse and remand the matter to the

---

6. We note that both the ALJ Decision and the Final Agency Decision stated that "[l]obbying consists of any of the following *activities*: 1) influencing or

BEASON v. N.C. DEP'T OF SEC'Y OF STATE

[226 N.C. App. 233 (2013)]

trial court on the issue of whether petitioner's activities constituted lobbying under the statute.

## Conclusion

For the foregoing reasons, we affirm in part and reverse and remand in part the trial court's order.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

Judges ELMORE and STEELMAN concur.

———————————

attempting to influence legislative or executive action, or both, through direct communication *or activities*[.]" Thus, the conclusions are written in such a way that "activities" could include both direct communication or activities or could simply mean "activities," the second prong of the lobbying definition. However, what the ALJ Decision and the Final Agency Decision meant by "activities" does not affect our ultimate conclusion that the trial court erred in not considering both parts of the lobbying definition.