HUNTER, JR., Robert N., Judge.
Onslow County Sheriff Ed Brown (“Sheriff Brown”) appeals from orders entered on 4 November 2013 denying his motions to dismiss under Rule 12 as well as granting a preliminary injunction in favor of plaintiffs Sandhill Amusements, LLC (“Sandhill”) and Gift Surplus, LLC (“Gift Surplus”) (collectively “Plaintiffs”).[1]
We agree with Sheriff Brown that this Court has jurisdiction to determine his interlocutory appeal of the motions to dismiss because *342 his defense of sovereign immunity affects a substantial right warranting immediate review. We vacate certain portions of the preliminary injunction that affect a substantial right and dismiss Sheriff Brown’s appeal from the remaining portions of that order. On the merits of the motions to dismiss, we affirm the trial court.
I. Facts & Procedural History
On 2 July 2013, Alcohol Law Enforcement (“ALE”) Special Agent Kenny Simma (“Agent Simma”), Assistant Supervisor Keith Quick (“Agent Quick”), and Onslow County Sheriffs Office Sergeant John Matthews (“Sgt. Mathews”), in response to complaints that certain video gaming machines (hereinafter “kiosks”) were providing money payouts, visited a business in the Rhodestown area of Onslow County. The business that Sgt. Matthews and the ALE agents visited was located in a building with blacked-out windows lacking any exterior sign displaying the name of the business. Sgt. Matthews and the ALE agents peered inside through a crack in the tint and knocked on the door. A male unlocked and opened the door and allowed Sgt. Matthews and the ALE agents inside. Agent Simma said that inside
[t]he only things in the business was [sic] a counter with two Megatouch video poker machines on the counter, a pool table, I think a jukebox. I can’t remember if it was three or four of these specific devices we’re referring to, and a claw machine that - like you see at Walmart, you put a quarter in and try to pick up a stuffed animal, and a pool table.
Later the business’s proprietor arrived and showed Sgt. Matthews and the ALE agents how the machines worked.
The kiosks each include a 19” touch-screen display, an audio speaker, a control panel with “print ticket and play buttons,” a receipt printer, and a currency acceptor. The kiosks allow patrons the opportunity to purchase gift certificates that may be used at Gift Surplus’s online store, Avww.gift-surplus.com. When a patron inserts currency into the kiosk, a receipt is printed with equivalent credits ($1 is equivalent to 100 sweepstakes entries). The receipts printed also contain a “quick response code,” which users may scan to enter a weekly drawing on the Gift Surplus website. Patrons may also use the kiosk to request a free entry request code, which allows for 100 free sweepstakes entries.
The kiosks contain five game themes: “Silver Bar Spin,” “Truck Stop,” “Lucky Shamrock 2,” “Magic Tricks,” and “Candy Money.” Nick Farley *343 (“Mr. Farley”), an expert in gaming machines and software, described these game as follows:
Each of the aforementioned game themes offer several play levels which the participant may choose. A single finite pool is allocated to each play level for each game theme. Game play for these themes may be accomplished one of two ways:
(1) By pressing the “REVEAL” button an entry is drawn from the corresponding theme/play level finite pool. The potential value is shown to the participant, and they are prompted to “Press SKIP or ANIMATE.” Pressing either button will reveal a reel outcome. If the entry had no winning prize, a non-winning reel combination is displayed and either the play ends (if the “SKIP” button was pressed), or the participant is given the chance to nudge one of the three reels either up or down to another non-winning outcome (if the “ANIMATE” button was pressed). If the entry has a winning prize, a non-winning reel outcome is displayed and the participant must make a decision to nudge one of the three reels either up or down to align a winning combination corresponding to the prize value previous shown.
(2) Alternatively, a participant may initiate the play by pressing the “ANIMATE” or “PLAY” button. A game initiated by pressing either the “ANIMATE” or “PLAY” button will not show the potential win value, but rather simply display a non-winning reel outcome which the player must then make a decision to nudge one of the three reels either up or down to align a winning combination.
Regardless of the method the player uses to initiate play, the potential prize-value is determined by the entry revealed. Whether the potential prize is awarded is dependent upon the participant successfully nudging the correct reel in the correct direction to obtain a winning combination of symbols. Should a player fail to nudge the correct reel in the correct direction to obtain a winning combination, the potential prize is forfeited.
Agent Simma later told his supervisor about his visit and expressed his opinion that the kiosks were illegal video sweepstakes machines. The ALE agents later returned and took photographs and videos of the *344 kiosks. Agent Simma then sent the videos to Deputy Director Mark Senter at ALE headquarters, who also felt that the kiosks in Rhodestown violated the statutes regulating video sweepstakes machines. After receiving the ALE agents’ report, District Attorney Ernie Lee and Sheriff Brown composed a letter to Richard W. Frye (“Mr. Frye”), President of Sandhill (hereinafter “innocent owner letter”). The letter informed Mr. Frye that the kiosks would be seized as evidence and that the person/ persons in possession would be criminally charged. Mr. Frye testified that Sandhill removed kiosks from two Onslow County locations and opted not to place kiosks in five other Onslow County locations after receiving the innocent owner letter.
On 27 September 2013, Sandhill and Gift Surplus filed a joint Complaint and Motion for Preliminary Injunctive Relief against Sheriff Brown in his official capacity. The complaint alleged that Plaintiffs were suffering irreparable injury from the loss of revenues and profits resulting from the innocent owner letter issued by Sheriff Brown stating that the Plaintiffs’ kiosks were illegal. Plaintiffs alleged that, since Sheriff Brown issued this letter, existing retail outlets that used Plaintiffs’ products have removed the kiosks, refused to install the kiosks, or gave Plaintiffs notice that they intended to remove the kiosks. Plaintiffs also attached the affidavit and report of Mr. Farley, who opined that the kiosks operated based on skill and dexterity, rather than mere chance.
Plaintiffs’ complaint sought the issuance of (i) preliminary and permanent injunctions prohibiting Defendants from removing the kiosks from any establishment in North Carolina and from issuing warnings and citations to such facilities; (ii) preliminary and permanent injunctions prohibiting Defendants from forcing or coercing a North Carolina retailer to remove Plaintiffs’ kiosks; (iii) a preliminary injunction prohibiting Defendants from making or issuing statements outside of the litigation stating that the kiosks were illegal; and (iv) a declaratory judgment after a full hearing that declared the kiosks and Plaintiffs’ marketing system are “not prohibited gambling, lottery or gaming products.”
On 9 October 2013, Sheriff Brown filed motions to dismiss for lack of subject matter jurisdiction under N.C. R. Civ. P. 12(b)(1), lack of personal jurisdiction under N.C. R. Civ. P. 12(b)(2), failure to state a claim upon which relief may be granted under N.C. R. Civ. P. 12(b)(6), and failure to bring suit on behalf of the real party in interest under N.C. Gen. Stat. § 1-67 (2013).
On 11 October 2013, the trial court held a hearing concerning Sheriff Brown’s motion to dismiss and Plaintiffs’ motion for injunctive relief. On *345 4 November 2013, Judge Jenkins entered an order relying in part on the expert witness’s opinions that denied Sheriff Brown’s motion to dismiss and granted Plaintiffs’ motion for a preliminary injunction. In its orders, the trial court held that there was a likelihood that the Plaintiffs would prevail in that:
(a) Gift Surplus System v1-01.1 and the Gift Surplus computer kiosk operated by Gift Surplus, LLC, conduct a valid sweepstakes within the applicable law.
(b) The Gift Surplus System v1-01.1 and the Gift Surplus computer kiosk operated by Gift Surplus, LLC, in promotion of their sweepstakes are dependent on skill or dexterity as required under North Carolina statutory law.
(c) The Gift Surplus System v1-01.1 and the Gift Surplus computer kiosk operated by Gift Surplus, LLC, is a lawful promotional device for the sale of gift certificates and operation of their promotional sweepstakes.
The trial court also held that the suit was not barred by the doctrine of sovereign immunity and that Defendant had failed to show that Plaintiffs’ claim should be dismissed under Rule 12(b)(1), Rule 12(b) (2), Rule 12(b)(6), or N.C. Gen. Stat. § 1-57. Accordingly, the trial court denied Defendant’s motion to dismiss and granted Plaintiffs’ request for the issuance of a preliminary injunction. Under the preliminary injunction, Sheriff Brown was:
a. Restrained and enjoined from using North Carolina General Statutes Sections 14-292, 14-293, 14-301, 14-306.1A, and 14-306.4 to prohibit the Plaintiffs from displaying, selling, operating or promoting the Gift Surplus System v1-01.1 and the Gift Surplus computer kiosk and sweepstakes promotion of the www.giftsurplus.com website and gift cards; and,
b. Restrained and enjoined from compelling or attempting to compel, coerce[,] or persuade the Plaintiffs to remove the Gift Surplus System v1-01.1 and the Gift Surplus computer kiosks and equipment associated with the kiosks and sweepstakes from any retail establishment in Onslow County; and,
c. Restrained and enjoined from citing or prosecuting the Plaintiffs for criminal administrative offenses or violations by reason of such party’s display, sale, operation[,] *346 or promotion of the Gift Surplus System v1-01.1 and the Gift Surplus computer kiosks and sweepstakes promotions of the www.gift-surplus.com website and gift cards in Onslow County.
The trial court limited the applicability of the preliminary injunction to “those Onslow County places which are validly operating four or less Gift Surplus System v1-01.1/Gift Surplus computer kiosks....” Sheriff Brown filed timely written notice of appeal on 13 November 2013.
II. Appellate Jurisdiction
A judicial order is either interlocutory or the final determination of the rights of the parties. N.C. R. Civ. P. 54(a). In Veazey v. Durham, 231 N.C. 357, 57 S.E.2d 377 (1950), our Supreme Court succinctly explained the difference between the two types of orders:
A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court.... An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.
Id. at 361-62, 57 S.E.2d at 381 (citations omitted); see also Royal Oak Concerned Citizens Ass’n v. Brunswick Cnty, _ N.C. App _, _, 756 S.E.2d 833, 835 (2014) (citations omitted). Final judgments are appeal-able under N.C. Gen. Stat. § 7A-27 (2013). “Interlocutory orders may be appealed only where there has been a final determination of at least one claim” and the trial court certifies under N.C. R. Civ. P. 54(b) that “there is no just reason to delay the appeal” or, alternatively, if “delaying the appeal would prejudice a substantial right.” White v. Carver, 175 N.C. App. 136, 139, 622 S.E.2d 718, 720 (2005) (citations, alterations, and quotation marks omitted) (“The reason for this rule is to prevent fragmentary, premature and unnecessary appeals by permitting the trial court to bring the case to final judgment before it is presented to the appellate courts.”); see also N.C. Gen. Stat. § 1-277 (2013).
Sheriff Brown’s appeal from the order denying the motions to dismiss and granting the preliminary injunction is interlocutory since the trial court’s orders did not dispose of the case. Additionally, there was no Rule 54(b) certification by the trial court. Accordingly, we consider whether Sheriff Brown’s asserted defense of sovereign immunity affects a substantial right.
*347 Whether an interlocutory order affects a substantial right “is determined on a case by case basis.” McConnell v. McConnell, 151 N.C. App. 622, 625, 566 S.E.2d 801, 803 (2002). The appellant bears the burden of establishing that a substantial right will be affected unless he is allowed an immediate appeal. Embler v. Embler, 143 N.C. App. 162, 166, 545 S.E.2d 259, 262 (2001) (citations omitted). “Our Supreme Court has defined ‘substantial right’ as a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a [person] is entitled to have preserved and protected by law: a material right.” Royal Oak, _ N.C. App. at _, 756 S.E.2d at 835.
“Essentially a two-part test has developed—the right itself must be substantial and the deprivation of that substantial right must potentially work injury ... if not corrected before appeal from final judgment.” Goldston v. Am. Motors Corp., 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990). To prove that a substantial right is affected, an appellant must first prove that the right itself is substantial. Id. Second, an appellant “must demonstrate why the order affects a substantial right. . . .” Hoke Cnty. Bd. of Educ. v. State, 198 N.C. App. 274, 277-78, 679 S.E.2d 512, 516 (2009) (emphasis in original).
Sheriff Brown asserts that the rejection of his defense of sovereign immunity affects a substantial right. Sheriff Brown also argues that the trial court’s issuance of the preliminary injunction enjoins him from enforcing criminal laws and also affects a substantial right. We address each in turn.
A. Motions to Dismiss
Sheriff Brown contends that the denial of his 12(b)(1), (2), and (6) motions to dismiss based on sovereign immunity affects a substantial right. We agree.
“The denial of a motion to dismiss is an interlocutory order which is not immediately appealable unless that denial affects a substantial right of the appellant.” Carl v. State, 192 N.C. App. 544, 550, 665 S.E.2d 787, 793 (2008). “The appealing party bears the burden of demonstrating that the order from which he or she seeks to appeal is appealable despite its interlocutory nature.” Hamilton v. Mortg. Info. Servs., 212 N.C. App. 73, 77, 711 S.E.2d 185, 189 (2011).
This Court has “repeatedly held that appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review.” Price v. Davis, 132 N.C. App. 556, *348 558-59, 512 S.E.2d 783, 785 (1999). “[W]hen [a] motion is made on the grounds of sovereign and qualified immunity,... a denial is immediately appealable, because to force a defendant to proceed with a trial from which he should be immune would vitiate the doctrine of sovereign immunity.” Smith v. Phillips, 117 N.C. App. 378, 380, 451 S.E.2d 309, 311 (1994).
Here, we consider the denial of a motion to dismiss based on sovereign immunity and, accordingly, we must review whether Sheriff Brown is entitled to that defense. Atl. Coast Conference v. Univ. of Maryland, _ N.C. App. _, _, 751 S.E.2d 612, 617 (2013) (“Defendants’ underlying interest in asserting sovereign immunity is substantial . . . [.]”); Richmond Cnty. Bd. of Educ. v. Cowell, _ N.C. App. _, _, 739 S.E.2d 566, 568 (2013), review denied, _ N.C. _, 747 S.E.2d 553 (2013).
However, we note that “ ‘a motion to dismiss based on sovereign immunity is a jurisdictional issue [and] whether sovereign immunity is grounded in a lack of subject matter jurisdiction or personal jurisdiction is unsettled in North Carolina.’” Atl. Coast Conference, _ N.C. App. at _, 751 S.E.2d at 617 (quoting M Series Rebuild, LLC v. Town of Mount Pleasant, _ N.C. App. _, _, 730 S.E.2d 254, 257 (2012) (alterations omitted)). “[B]ecause our case law remains ambiguous as to the type of jurisdictional challenge presented by a sovereign immunity defense, the ability of a litigant raising the defense to immediately appeal may vary, to some extent, based on the manner in which the motion is styled.” Id. As in Atl. Coast Conference, “we leave the type of jurisdictional challenge presented by a sovereign immunity claim for resolution by a future court” and accept jurisdiction of Sheriff Brown’s appeal pursuant to the authority conferred by N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d). Id. Accordingly, we now address whether sovereign immunity barred Plaintiffs’ action for declaratory judgment.
i. Standard of Review
The standard of review for the denial of a motion to dismiss on the basis of sovereign immunity is de novo. White v. Trew, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013).
“Under de novo review, we examine the case with new eyes.” State v. Young, _ N.C. App. _, _, 756 S.E.2d 768, 779 (2014) “[D]e novo means fresh or anew; for a second time, and an appeal de novo is an appeal in which the appellate court uses the trial court’s record but reviews the evidence and law without deference to the trial court’s rulings.” Parker v. Glosson, 182 N.C. App. 229, 231, 641 S.E.2d 735, 737 (2007) (quotation marks and citations omitted).
*349 ii. Merits of Sovereign Immunity Defense
“Under the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity.”[2] Meyer v. Walls, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997). Further
when an action is brought against individual officers in their official capacities the action is one against the state for the purposes of applying the doctrine of sovereign immunity. . . .[I]f plaintiff’s complaint demonstrates that she has sued the defendants only in an official capacity, rather than as individuals, defendants would be potentially shielded from plaintiff’s cause of action by governmental immunity.
Whitaker v. Clark, 109 N.C. App. 379, 381-82, 427 S.E.2d 142, 143-44 (1993) (citations omitted). Ultimately
[t]he crucial question for determining whether a defendant is sued in an individual dr official capacity is the nature of the relief sought, not the nature of the act or omission alleged. If the plaintiff seeks an injunction requiring the defendant to take an action involving the exercise of a governmental power, the defendant is named in an official capacity. If money damages are sought, the court must ascertain whether the complaint indicates that the damages are sought from the government or from the pocket of the individual defendant. If the former, it is an official-capacity claim; if the latter, it is an individual-capacity claim; and if it is both, then the claims proceed in both capacities.
Meyer, 347 N.C. at 110, 489 S.E.2d at 887 (quotation marks and citations omitted).
“The doctrine of sovereign immunity bars actions against public officials sued in their official capacities. Sheriffs and deputy sheriffs are *350 considered public officials for purposes of sovereign immunity. Thus, sovereign immunity bars plaintiff’s claims against defendants in their official capacities.” Phillips v. Gray, 163 N.C. App. 52, 56-57, 592 S.E.2d 229, 232 (2004) (citations omitted).
Plaintiffs sued Sheriff Brown in his official capacity in accordance with White. 366 N.C. at 364, 736 S.E.2d at 169. Additionally, Plaintiffs seek “an injunction requiring the defendant to take an action involving the exercise of a governmental power,” which means that “the defendant is named in an official capacity.” Meyer, 347 N.C. at 110, 489 S.E.2d at 887. From the foregoing, it appears that Plaintiffs’ claim should be dismissed, since sovereign immunity would typically bar claims against Sheriff Brown in his official capacity.
However, this Court’s opinion in Am. Treasures, Inc. v. State, 173 N.C. App. 170, 617 S.E.2d 346 (2005), controls this case. Am. Treasures concerned a seller of long-distance pre-paid phone cards that included a free promotional scratch-off game piece. Id. at 172-73, 617 S.E.2d at 348. The plaintiff sold these cards through convenience stores and, eventually, ALE agents began “threatening to take action against the convenience stores’ licenses to sell beer and alcoholic beverages ... on the grounds that the sale of plaintiff’s phone cards was illegal.” Id. at 173-74, 617 S.E.2d at 348. The plaintiff brought an action for declaratory judgment and injunctive relief against the State. Id. at 174, 617 S.E.2d at 348.
In Am. Treasures, this Court discussed McCormick v. Proctor, 217 N.C. 23, 6 S.E.2d 870 (1940). Am. Treasures, 173 N.C. App. at 175, 617 S.E.2d at 349-50. Specifically:
In McCormick, law enforcement officers interfered with an owner’s possession of certain slot machines on the grounds that such machines were illegal. Id., 217 N.C. at 24, 6 S.E.2d at 871. The trial court declined to restrain the interference on the grounds that the officers were engaged in the enforcement of criminal law and refused to hear evidence or find facts regarding the legality of the machines. Id. Citing the above principles, our Supreme Court reversed, holding that equity may nevertheless be invoked as an exception to those principles and may operate to “interfere, even to prevent criminal prosecutions, when this is necessary to protect effectually property rights and to prevent irremediable injuries to the rights of persons.” Id., 217 N.C. at 29, 6 S.E.2d at 874.
*351 Id. at 175, 617 S.E.2d at 349 (emphasis added). This Court in Am. Treasures also discussed Animal Protection Society v. State, 95 N.C. App. 258, 382 S.E.2d 801 (1989):
Moreover, this Court has previously reviewed a trial court’s consideration of a prayer for declaratory and injunctive relief concerning the applicability of North Carolina’s bingo statutes to a charitable sales promotion without indicating the existence of any jurisdictional bar. Animal Protection Society v. State, 95 N.C. App. 258, 382 S.E.2d 801 (1989).
Am. Treasures, 173 N.C. App. at 175-76, 617 S.E.2d at 349-50. Ultimately this Court relied on the two cases in holding that:
the trial court’s exercise of jurisdiction under the facts of the instant case was proper. First, we find McCormick and Animal Protection Society are sufficiently similar to the facts of the instant case and are controlling on the issue of the trial court’s jurisdiction. Second, the declaratory judgment procedure is the only way plaintiff can protect its property rights and prevent ALE from foreclosing the sale of its product in convenience stores.
[[Image here]]
Accordingly, without seeking a declaratory judgment, plaintiff would be unable to effectively protect its property rights. Defendants’ jurisdictional argument is overruled.
Id. at 176, 617 S.E.2d at 350 (emphasis added).
Here, as in Am. Treasures, Plaintiffs face restrictions on then-property rights resulting from Sheriff Brown’s transmission of the innocent owner letter, which effectively barred any future sale and current placement of their kiosks. Additionally, as in Am. Treasures, sovereign immunity acts as a bar to Plaintiffs’ ability to seek redress through monetary damages. Without such redress, Plaintiffs have no viable option for protecting their property rights during this litigation.
Accordingly, as (i) the facts at present are sufficiently similar to the controlling cases in this area and (ii) the declaratory judgment procedure is the only method by which Plaintiffs have recourse to protect their property interests in the kiosks, we hold that the trial court properly exercised jurisdiction and that sovereign immunity did not bar Plaintiffs’ claim for injunctive relief. We next address whether Sheriff *352 Brown’s challenge to the trial court’s decision to issue a preliminary injunction is interlocutory.
B. Preliminary Injunction
The purpose of a preliminary injunction is ordinarily to preserve the status quo pending trial on the merits. Its issuance is a matter of discretion to be exercised by the hearing judge after a careful balancing of the equities. Its impact is temporary and lasts no longer than the pendency of the action. Its decree bears no precedent to guide the final determination of the rights of the parties. In form, purpose, and effect, it is purely interlocutory. Thus, the threshold question presented by a purported appeal from an order granting a preliminary injunction is whether the appellant has been deprived of any substantial right which might be lost should the order escape appellate review before final judgment.
A.E.P. Indus., Inc. v. McClure, 308 N.C. 393, 400, 302 S.E.2d 754, 759 (1983) (citation and internal quotation marks omitted); see also Bessemer City Express, Inc. v. City of Kings Mountain, 155 N.C. App. 637, 639, 573 S.E.2d 712, 714 (2002); Little v. Stogner, 140 N.C. App. 380, 383, 536 S.E.2d 334, 336 (2000) (“For a ‘defendant to have a right of appeal from a mandatory preliminary injunction, ‘substantial rights’ of the appellant must be adversely affected.’” (quoting Dixon v. Dixon, 62 N.C. App. 744, 744, 303 S.E.2d 606, 607 (1983)).
A substantial right is affected when the trial court’s order prohibits the State from enforcing the law. Beason v. State Dep’t of the Sec’y of State, _ N.C. App. _, _, 743 S.E.2d 41, 44-45 (2013) (“[T]he trial court found that respondent was improperly interpreting statutes it is responsible for enforcing. Thus, we conclude that respondent suffers the risk of injury if we do not consider the merits of this interlocutory appeal. Therefore, we deny petitioner’s motion to dismiss.”); Johnston v. State, _ N.C. App. _, _, 735 S.E.2d 859, 864 (2012), writ allowed, review on additional issues denied, 366 N.C. 562, 738 S.E.2d 360 (2013) and appeal dismissed, 366 N.C. 562, 738 S.E.2d 361 (2013) and aff’d, _ N.C. App. _, 749 S.E.2d 278 (2013).
Sheriff Brown argues that his ability to enforce the law is impeded by the trial court’s grant of a preliminary injunction, and points our attention to Rockford-Cohen Grp., LLC v. N.C. Dep’t of Ins., _ N.C. App. _, 749 S.E.2d 469 (2013), which stated that “[w]hen an agent of the State that is charged with enforcing statutes chooses to appeal rulings *353 limiting the enforcement of those statutes, the right to enforce the statute is substantial and the rulings are immediately appealable.” Id. at _, 749 S.E.2d at 471.
Rockford ultimately held that, because the defendant was not a state agency or agent of the State charged with enforcing the statutes, a substantial right was not affected. Id. at _, 749 S.E.2d at 472. This Court relied on Johnston and Gilbert v. N.C. State Bar, 363 N.C. 70, 76-77, 678 S.E.2d 602, 606 (2009) for this proposition. This Court in Johnston held
that the State has a substantial right to enforce the criminal laws of North Carolina and that this right is affected by a ruling declaring a statute, duly enacted by the General Assembly, to be unconstitutional. The State has also demonstrated that the deprivation of that substantial right will potentially work injury if not addressed before appeal from a final judgment. The trial court’s judgment prohibits the State from prosecuting plaintiff for possession of a firearm. Further, it casts doubt upon every prosecution by the State throughout North Carolina under Article 54A of Chapter 14 of the General Statutes.
Johnston, _ N.C. App. at _, 735 S.E.2d at 864.
Here, the trial court’s grant of preliminary injunction violated the substantial right of Sheriff Brown in its sixth conclusion of law:
6. The Gift Surplus System v1-01.1 and the Gift Surplus computer kiosk promote the sale of products through a lawful sweepstakes under North Carolina law.
In essence, this conclusion of law determines that these particular kiosks fit within the statutory framework and does so unnecessarily at the preliminary injunction stage. In Beason, this Court held that “[t]he substantial basis of this appeal involves the trial court’s order concluding that the alleged violations respondent fined petitioner for were not actually violations." Beason, _ N.C. App. at _, 743 S.E.2d at 45 (emphasis added). Here, the trial court does the same thing, since it declares that Plaintiffs were operating a “lawful sweepstakes” and, thus, finds that the Sheriff threatened to prosecute actions that were not actually violative of the statutes. This broad wording in the sixth conclusion of law goes much further than the equitable consideration of “likely to prevail on the merits.” Instead, this conclusion of law makes a declaration concerning the lawfulness of these kiosks and would “cast doubt upon every prosecution by the State throughout North Carolina . . . .” Johnston, _ N.C. App. at _, 735 S.E.2d at 864.
*354 Similarly, in the decretal section of the order, the trial court ordered that “[t]he Preliminary Injunction ... is specifically enforceable in those Onslow County places which are validly operating four or less Gift Surplus System v1-01.1/Gift Surplus computer kiosks at one location or on one site.” The trial court’s use of “validly” within the preliminary injunction, similar to its use of “lawful” in its sixth conclusion of law, exceeds the scope of a preliminary injunction, as use of the term “valid” may imply within the preliminary injunction that Plaintiffs kiosks are “legally sufficient” within the applicable statutes. Black’s Law Dictionary 1690 (9th ed. 2009). Such a conclusion would also cast doubt on prosecutions undertaken by Sheriff Brown and impede his ability to enforce the law.
As these portions of the preliminary injunction go beyond maintaining the status quo by declaring that Plaintiffs’ conduct was lawful or valid, these portions affect Sheriff Brown’s substantial right to enforce the laws of North Carolina. Thus, we exercise jurisdiction for the limited purpose of vacating the sixth conclusion of law in its entirety and striking the word “validly” from the third item in the decretal section of the preliminary injunction.
The remainder of the preliminary injunction does not implicate a substantial right in enforcing the statutes and simply maintained the status quo pending a trial on the merits. Sheriff Brown was prohibited from enforcing certain statutes listed in the decretal section of the order (N.C. Gen. Stat. §§ 14-292,14-293,14-301,14-306.1A, and 14-306.4). Additionally, the preliminary injunction was limited in its scope: the bar against enforcement extends only to “those Onslow County places which are . . . operating four or less Gift Surplus System v1-01.1/Gift Surplus computer kiosks at one location or on one site.” The order also has no effect “on any individuals or entities who are not a party hereto, or on the parties hereto upon the trial or ultimate disposition of this matter.” Simply, Sheriff Brown was not enjoined from enforcing the criminal laws of North Carolina by the remainder of the trial court’s preliminary injunction; Sheriff Brown was enjoined from enforcing certain criminal laws against parties to the litigation until the resolution of this case.[3] *355 The remainder of the preliminary injunction preserves the status quo and “all parties remain free to fully litigate the merits of the case in the correct procedural context before the trial court_” CB & I Constructors, Inc. v. Town of Wake Forest, 157 N.C. App. 545, 550, 579 S.E.2d 502, 505 (2003). The remainder of the preliminary injunction does not affect a substantial right. As the remainder does not affect a substantial right, we do not have jurisdiction to consider this interlocutory appeal, so the remainder of Sheriff Brown’s appeal is dismissed.
We next turn to the justiciability argument advanced by Sheriff Brown in opposition to Plaintiffs’ request for a declaratory judgment.
C. Justiciability of Declaratory Judgment Claim
The North Carolina Declaratory Judgment Act provides that
Any person interested . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.
N.C. Gen. Stat. § 1-254 (2013). Further, N.C. Gen. Stat. § 1-253 (2013) provides trial courts with the “power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed.”
Our Supreme Court has “required that an actual controversy exist both at the time of the filing of the pleading and at the time of hearing” in declaratory judgment actions. Sharpe v. Park Newspapers of Lumberton, Inc., 317 N.C. 579, 585, 347 S.E.2d 25, 30 (1986). Without an “actual controversy between the parties,” jurisdiction does not attach under the Declaratory Judgment Act. Fabrikant v. Currituck Cnty., 174 N.C. App. 30, 44, 621 S.E.2d 19, 29 (2005). An “actual controversy” must be more than a “mere difference of opinion between the parties” and this Court lacks the authority to render an advisory opinion that “the parties might, so to speak, put on ice to be used if and when occasion might arise.” Id. (citations and quotation marks omitted). However,
[although a declaratory judgment action must involve an actual controversy between the parties, plaintiffs are not required to allege or prove that a traditional cause of action exists against defendants in order to establish an actual controversy. A declaratory judgment should issue (1) when it will serve a useful purpose in clarifying and *356 settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.
Goldston, 361 N.C. at 33, 637 S.E.2d at 881 (citations, quotation marks, and alterations omitted); see also Wake Cares, Inc., et al. v. Wake Cnty. Bd. of Educ., 190 N.C. App. 1, 12, 660 S.E.2d 217, 224 (2008), aff’d, 363 N.C. 165, 675 S.E.2d 345 (2009) (holding that an actual controversy existed where plaintiffs, who were not charged with or threatened to be charged with a crime, were affected by several statutes and where a declaratory judgment “would terminate and afford relief from the uncertainty, insecurity, and controversy currently existing”). Ultimately, plaintiffs in declaratory judgment actions are “not required to sustain actual losses in order to make a test case[,]” since that “ ‘requirement would thwart the remedial purpose of the Declaratory Judgment Act.’ ” Charlotte-Mecklenburg Hosp. Auth. v. N.C. Indus. Comm’n, 336 N.C. 200, 214, 443 S.E.2d 716, 725 (1994), superseded by statute on other grounds as stated in Mehaffey v. Burger King, _ N.C. _, _, 749 S.E.2d 252, 256 (2013) (quoting Bland v. City of Wilmington, 278 N.C. 657, 659, 180 S.E.2d 813, 815 (1971)).
Plaintiffs seek to determine whether the software and kiosks they operate comply with N.C. Gen. Stat. §§ 14-292, 14-293, 14-301, 14-306.1A, and 14-306.4 (2013), which regulate electronic sweepstakes machines. Plaintiffs do not seek to determine the criminal culpability of their potential customers, and the courts retain the ability to grant a declaratory judgment when a “questioned statute relates to penal matters.” Jernigan v. State, 279 N.C. 556, 561, 184 S.E.2d 259, 263-64 (1971). Simply put, “[w]hen a plaintiff has a property interest which may be adversely affected by the enforcement of the criminal statute, he may maintain an action under the Declaratory Judgment Act to determine the validity of the statute in protection of his property rights.” Id. at 561, 184 S.E.2d at 264; see also Calcutt v. McGeachy, 213 N.C. 1, 2, 195 S.E. 49, 49 (1938) (allowing jurisdiction for a declaratory judgment action to test the constitutionality of a criminal statute “prohibiting the manufacture, sale, possession, and use of gambling devices”).
The record tends to show a conflict between Sheriff Brown’s interpretation and Plaintiff’s interpretation of the relevant statutes. Sheriff Brown sent an innocent owner letter declaring that the machines were illegal, while Plaintiffs countered with expert testimony asserting that the machines complied with the State’s recent statutory changes. A declaratory judgment would help clarify the “legal relations at issue” and would remove uncertainty from Plaintiffs’ continuing business interests.
*357 Sheriff Brown argues that “there is no actual controversy existing at the time of the hearing[.]” This argument is premised on (a) Sheriff Brown having seized kiosks at a Rhodestown location rather than where Sandhill’s owner believed the machines actually were, which was in the Town of Holly Ridge, and (b) Sheriff Brown having removed the kiosks from the Rhodestown location prior to the hearing on the motion to dismiss. Sheriff Brown cites Fabrikant for the proposition that the actual controversy must exist “at the time of the filing of the pleading and at the time of hearing.” Fabrikant, 174 N.C. App. at 44, 621 S.E.2d at 29.
However, Sheriff Brown’s office, through the transmission of the innocent owner letter, expressed doubts about the legality of “several video gaming machines associated with the web-site known as www.gift-Surplus.com.” The hearing itself centered on the conflict concerning whether the kiosks at issue were illegal and the uncertainty concerning the legality of these kiosks ultimately impacts Plaintiffs’ ability to operate a business going forward. Additionally, Plaintiffs alleged in their complaint that, since Sheriff Brown issued the innocent owner letter, existing retail outlets that used Plaintiffs’ products had removed the kiosks or chosen not to use the kiosks due to the uncertainty surrounding their legality. From the foregoing, it is clear that a justiciable actual controversy, as required by the Declaratory Judgment Act, exists. Accordingly, the trial court’s exercise of jurisdiction over the declaratory judgment claim was proper.
Because we (a) hold that Sheriff Brown is not entitled to the defense of sovereign immunity on the Rule 12 motions, (b) dismiss Sheriff Brown’s appeal of the trial court’s grant of a preliminary injunction in part and strike portions of the preliminary injunction in part, and (c) find an actual case or controversy existed, we do not address Sheriff Brown’s remaining arguments on appeal.
III. Conclusion
In conclusion, (i) we hold that the trial court’s denial of Sheriff Brown’s motion to dismiss affected a substantial right; (ii) we affirm the trial court’s order denying Sheriff Brown’s motion to dismiss; (iii) we exercise limited jurisdiction to vacate portions of the preliminary injunction which exceed the scope of a preliminary injunction; and (iv) we dismiss Sheriff Brown’s appeal of the trial court’s grant of a preliminary injunction as interlocutory and not affecting a substantial right.
AFFIRMED in part, VACATED in part, and DISMISSED in part.
Judge ELMORE concurs.

. Gift Surplus is a Georgia corporation licensed to do business in North Carolina. Gift Surplus licenses the kiosks at issue in this case. Gift Surplus’s kiosks are “sweepstakes promotion devices used to promote the sale of gift cards and e-commerce business.” Sandhill Amusement, Inc. (“Sandhill”), distributes the kiosks in Onslow County and surrounding areas.

. Sheriff Brown does not argue that Plaintiffs failed to assert waiver of sovereign immunity in his brief. When considering a motion to dismiss based on a defense of sovereign immunity, the complaint must allege a waiver, without which the complaint fails to state a cause of action. Paquette v. Cnty. of Durham, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002). However, Sheriff Brown does not raise this issue on appeal nor does waiver appear to be addressed by either party or considered by the trial court. Accordingly we do not address this issue on appeal. Abbott v. N.C. Bd. of Nursing, 177 N.C. App. 45, 47-48, 627 S.E.2d 482, 484-85 (2006).

. This Court has found that enforcing the statutes against an individual affects a substantial right warranting immediate review, but has done so with permanent injunctions or final orders concerning enforcement of a particular statute or regulation. See, e.g., Gilbert, 363 N.C. at 75, 678 S.E.2d at 605 (“Although we express no opinion as to the merits of defendant’s Gilbert III complaint, we note that the trial court order from which defendant appeals includes a permanent injunction enjoining defendant from prosecuting Gilbert III.” (emphasis added)); Season, _ N.C. App. at _, 743 S.E.2d at 44-45 (considering an order that decided some of the petitioner’s claims and made definite statements that the petitioner’s actions were not violations of certain lobbying laws that respondent was responsible for enforcing).