IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-1

No. 363A14-4

Filed 11 February 2022

GIFT SURPLUS, LLC, and SANDHILL AMUSEMENTS, INC.,

Plaintiffs,

v.

STATE OF NORTH CAROLINA, ex rel. ROY COOPER, GOVERNOR, in his official capacity, BRANCH HEAD OF THE ALCOHOL LAW ENFORCEMENT BRANCH OF THE STATE BUREAU OF INVESTIGATION, MARK J. SENTER, in his official capacity, SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, ERIK A. HOOKS, in his official capacity, and DIRECTOR OF THE NORTH CAROLINA STATE BUREAU OF INVESTIGATION, BOB SCHURMEIER, in his official capacity.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 268 N.C. App. 1 (2019), reversing an order entered on 2 February 2018 by Judge Ebern T. Watson III, in the Superior Court, Onslow County. Heard in the Supreme Court on 23 March 2021.

*Fox Rothschild LLP, by Elizabeth Brooks Scherer, Troy D. Shelton and Kip D. Nelson; Hyler & Agan PLLC, by George B. Hyler, Jr.; and Grace, Tisdale, Clifton, P.A., by Michael A. Grace for plaintiff-appellants.*

*Joshua Stein, Attorney General, by James W. Doggett, Deputy Solicitor General, Olga Vysotskaya de Brito, Special Deputy Attorney General, and Ryan Y. Park, Solicitor General, for the State.*

*Edmond W. Caldwell, Jr. and Matthew L. Boyatt, for North Carolina Sheriffs' Association; Fred P. Baggett for North Carolina Association of Chiefs of Police;*

*and Jim O'Neill for North Carolina Conference of District Attorneys, amici curiae.*

HUDSON, Justice.

Gift Surplus, LLC, and Sandhill Amusements, Inc., (plaintiffs) sued Governor Roy Cooper and several state law enforcement officials (defendants) seeking a declaratory judgment that their operation of a sweepstakes through video game kiosks does not violate N.C.G.S. § 14-306.4, North Carolina's criminal prohibition on certain video sweepstakes. This case presents the third time plaintiffs have appeared before this Court seeking to avoid liability under North Carolina's ban on video sweepstakes. The question presented here is whether plaintiffs' new game, as modified since plaintiffs last appeared before this Court, is not "dependent on skill or chance" and is thus criminalized by N.C.G.S. § 14-306.4 (2021), which prohibits the operation of sweepstakes conducted through video games of chance. As we held over one hundred years ago and reaffirmed when plaintiffs appeared before this Court challenging the video sweepstakes ban twelve years ago,

> [n]o sooner is a lottery defined, and the definition applied to a given state of facts, than ingenuity is at work to evolve some scheme of evasion which is within the mischief, but not quite within the letter of the definition. But, in this way, it is not possible to escape the law's condemnation, for it will strip the transaction of all its thin and false apparel and consider it in its very nakedness. It will look to the substance and not to the form of it, in order to disclose its real elements and the pernicious tendencies which the law is seeking to prevent. The Court will inquire, not into the

> name, but into the game, however skillfully disguised, in order to ascertain if it is prohibited. It is the one playing at the game who is influenced by the hope enticingly held out, which is often false or disappointing, that he will, perhaps and by good luck, get something for nothing, or a great deal for a very little outlay. This is the lure that draws the credulous and unsuspecting into the deceptive scheme, and it is what the law denounces as wrong and demoralizing.

*Hest Techs., Inc. v. State ex rel. Perdue*, 366 N.C. 289, 289 (2012) (quoting *State v. Lipkin*, 169 N.C. 265, 271 (1915)). After "inquir[ing], not into the name, but into the game, however skillfully disguised" of plaintiffs, we hold that chance predominates over skill in plaintiffs' new game and, accordingly, that this game is a game of chance that violates the sweepstakes statute. Accordingly, we modify and affirm the decision of the Court of Appeals.

## I. Background

¶ 2      This case follows from the North Carolina General Assembly's repeated efforts since 2006 to ban all video-gaming machines, including video poker and other video card games. Act of June 6, 2006, N.C. Sess. Law 2006-6, §§ 4, 12, 2006 N.C. Sess. Laws 4, 4–5, 7 (codified as amended at N.C.G.S. § 14-306.1A (2021)). Since this first prohibition was enacted, owners of video-gaming machines have developed machines with various interactive operations, in apparent efforts to circumvent the ban. *See Hest*, 366 N.C. at 291. In response to these perceived loopholes, the General Assembly enacted Session Law 2010-103, "An Act to Ban the Use of Electronic Machines and Devices for Sweepstakes Purposes," codified at N.C.G.S. § 14-306.4. 2010 N.C. Sess.

Laws Ch. 408. N.C.G.S. § 14-306.4 makes it illegal to "[c]onduct a sweepstakes through the use of an entertaining display." N.C.G.S. § 14-306.4(b).[1]

¶ 3 Following enactment of the law, purveyors of video-game kiosks that were purportedly for sweepstakes challenged the law on First Amendment grounds. In *Hest*, this Court held that N.C.G.S. § 14-306.4 regulated conduct, with only incidental burdens on speech, and that the law was supported by a rational basis. 366 N.C. at 303. One of the plaintiffs here, Sandhill Amusements, was among a group of vendor-plaintiffs in a related case making the same First Amendment argument, which was rejected by this Court for the reasons stated in *Hest. Sandhill Amusements, Inc. v. State*, 366 N.C. 323, 324 (2012) (per curiam). Although the record shows Sandhill has a long history as a video-gaming company, in that lawsuit it argued it was a business that sold long-distance phone time, merely using video sweepstakes to promote its service.

¶ 4 In 2013, shortly after our decision in *Hest*, Sandhill began operating and distributing video-gaming kiosks for sweepstakes for plaintiff Gift Surplus. Gift Surplus operates an e-commerce website, www.giftsurplus.com, but does not maintain an inventory of the products it advertises and instead buys products as necessary to fill orders as a drop shipping business.

---

[1] A fuller history of the General Assembly's efforts to combat the circumvention of gambling laws is provided in *Hest*, 366 N.C. at 289–92.

In its business arrangement with Sandhill, Gift Surplus designs sweepstakes kiosks that it licenses to third-party operators like Sandhill. Sandhill places the kiosks into operation in convenience stores and retail establishments across North Carolina. The establishments are predominantly patronized by low-income customers, who Gift Surplus has identified as its target demographic.

Gift Surplus's kiosks appear like large video-game machines that look akin to video slot machines. When players put money into the kiosks, they receive what appear to be paper receipts called "e-credits" that can be exchanged either for products on Gift Surplus's drop shipping website or to play Gift Surplus's phone games. Players also receive sweepstakes entries which can be used to immediately play games on the kiosks. The kiosks offer five similar games, all featuring reel-spinning video resembling a slot machine. When the game begins, the reels spin, but the three slots never come to a stop in a complete line. Instead, players always have to "nudge" the slots up or down so that three symbols align on the middle line. In the initial iteration of these games, players only had to nudge one symbol into place to win.

The game also limits the number of players who can win meaningful prizes. On 75% of turns, the player will never be able to play for the largest prize of $2400 and, under the original setup, could win nothing.

Gift Surplus and Sandhill subsequently filed the present lawsuit, seeking a

declaratory judgment and preliminary and permanent injunctive relief initially against the Sheriff of Onslow County and then against the Governor and the present state defendants. A trial court judge issued a preliminary injunction for plaintiffs, which defendants appealed.

¶ 9 A divided panel of the Court of Appeals dismissed the appeal in *Sandhill Amusements, Inc. v. Sheriff of Onslow Cty.*, 236 N.C. App. 340 (2014), *rev'd per curiam*, *Sandhill Amusements, Inc. v. Miller*, 368 N.C. 91 (2015). Then-Judge Ervin dissented from the Court of Appeals majority, reasoning that plaintiffs could not show a likelihood of success on the merits at trial because chance predominated over skill in plaintiffs' game and, accordingly, it violated N.C.G.S. § 14-306.4, so the preliminary injunction should have been denied. *Id.* at 369–70 (Ervin, J., dissenting). On appeal, this Court reversed the decision of the Court of Appeals and adopted the reasoning of Judge Ervin's dissenting opinion. *Sandhill Amusements, Inc. v. Miller*, 368 N.C. 91 (2015).

¶ 10 On remand to the trial court, Gift Surplus made two changes to its games. First, they added a "winner-every-time" modification, so that, on the 75% of turns on which users originally could not win any prize, retailers can set up the machine to award a token prize of a few cents. Second, Gift Surplus added a "double nudge" modification, so that instead of nudging one symbol to win, retailers could set up the machines to require players to nudge two symbols into place.

¶ 11 After a bench trial, the trial court held that the sweepstakes game is lawful, relying on the new modifications made since remand to conclude that, based on the amended complaint and with the modifications, skill predominates over chance in plaintiffs' new game, unlike the game in *Sandhill*.

¶ 12 The trial court further concluded that the sale of Gift Surplus's "e-credits" was not a pretext for gambling. At trial, defendants presented evidence that the receipt-like e-credits are often thrown away rather than being redeemed in the online store or phone games. An officer in the Brunswick County Sheriff's Office testified that he visited an establishment and observed players at the kiosks throw e-credits away and, after searching the trash, found over $10,000 of unused e-credit receipts.

¶ 13 Defendants appealed the trial court's judgment to the Court of Appeals. At the Court of Appeals, the panel unanimously reversed the trial court judgment but issued three separate opinions. *See Gift Surplus, LLC v. State ex rel. Cooper*, 268 N.C. App. 1 (2019). First, Judge Murphy, in an opinion joined by Judge Collins, held that, since plaintiffs' new game was "visual information, capable of being seen by a sweepstakes entrant, that takes the form of actual game play, or simulated game play," the sweepstakes was conducted through an "entertaining display," regardless of whether the game was a game of chance or not. *Id.* at 4–5. Judge Bryant concurred in the result and would have required that the game not depend on skill or dexterity and held that "the games at issue do not amount to games whose outcomes are determined

by skill and dexterity, but rather, chance." *Id.* at 13 (Bryant, J., concurring in the result). Judge Collins joined fully with Judge Murphy's opinion, but wrote a separate opinion reasoning that "[t]o the extent our Supreme Court's adoption of Judge Ervin's dissent in *Sandhill* signals the Court's determination that a sweepstakes game falls within [N.C.G.S.] § 14-306.4's "entertaining display" prohibition *only* when the video game is not dependent on skill or dexterity, I agree with Judge Bryant's concurring opinion in this case . . ." *Id.* at 6–7 (Collins, J., concurring). Since the Court of Appeals held plaintiffs' new game violated N.C.G.S. § 14-306.4, it declined to reach the separate question of whether it also violated North Carolina's prohibition on gambling. *Id.* at 5.

¶ 14     Plaintiffs filed a notice of appeal based on a constitutional question, which this Court dismissed, and a petition for discretionary review, which was allowed. Defendants filed a conditional petition for discretionary review, which was also allowed.

## II.    Analysis

¶ 15     On appeal, plaintiffs first argue the Court of Appeals erred by applying a new legal standard for claims under the video sweepstakes statute rather than the predominant-factor test. Second, plaintiffs argue the application of the predominant-factor test is reviewed deferentially rather than de novo. Third, plaintiffs argue that, under the predominant-factor test, the trial court correctly determined that chance

did not predominate over skill in plaintiffs' new game and Judge Collins in her concurring opinion at the Court of Appeals erred in stating otherwise., plaintiffs argue that their new game does not constitute gambling. We consider plaintiffs' arguments in turn.

**A. The Predominant-Factor Test Under N.C.G.S. § 14-306.4**

¶ 16        Plaintiffs first argue the majority opinion below erred in failing to apply the predominant-factor test under N.C.G.S. § 14-306.4 as applied in then-Judge Ervin's dissent in *Sandhill* and as adopted by this Court. Defendants do not argue for the majority's holding that it is not necessary to decide whether games "are chance or skill-based." *Gift Surplus*, 268 N.C. App. at 4. We agree and hold that the majority opinion erred in failing to consider whether skill or chance predominates in the game under the sweepstakes statute as interpreted by this Court's prior decision in *Sandhill*.[2]

---

[2] Plaintiffs argue the majority erred in failing to apply the predominant-factor test for a myriad of procedural reasons, including that the Court of Appeals "swapped horses on appeal" for the appellant, that it violated the law-of-the-case doctrine, that defendants failed to make that argument before the trial court and so abandoned it under North Carolina Rule of Appellate Procedure 10, that even if properly raised defendants abandoned the argument on appeal under Appellate Rule 28(b)(6), that adopting a theory not argued offends notions of equity and fundamental fairness, and, taken together, violation of these doctrines contravenes the "principle of party presentation" recently enunciated by the Supreme Court of the United States. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1578–89 (2020). While the majority opinion's discarding of the predominant-factor test in interpreting N.C.G.S. § 14-306.4 in favor of a theory not advanced by any party was doubtless procedurally improper, we need not reach these issues to hold that the majority below erred because it contravened binding precedent of this Court in *Sandhill*. *See Cannon v. Miller*, 313 N.C. 324, 324 (1985) (holding the Court of Appeals has no authority to overrule decisions of this Court).

North Carolina's criminal code prohibits sweepstakes conducted through electronic machines using video games of chance. This prohibition was codified at N.C.G.S. § 14-306.4, entitled "Electronic machines and devices for sweepstakes prohibited." Under this statute, a sweepstakes is defined as "any game, advertising scheme or plan, or other promotion, which, with or without payment of any consideration, a person may enter to win or become eligible to receive any prize, the determination of which is based upon chance." N.C.G.S. § 14-306.4(a)(5). N.C.G.S. § 14-306.4(b) provides that "it shall be unlawful for any person to operate, or place into operation, an electronic machine or device to . . . [c]onduct a sweepstakes through the use of an entertaining display, including the entry process or the reveal of a prize." N.C.G.S. § 14-306(b), (b)(1) (2019). The statute defines "entertaining display" as follows:

> [V]isual information, capable of being seen by a sweepstakes entrant, that takes the form of actual game play, or simulated game play, such as, by way of illustration and not exclusion:
> a.      A video poker game or any other kind of video playing card game.
> b.      A video bingo game.
> c.      A video craps game.
> d.      A video keno game.
> e.      A video lotto game.
> f.      Eight liner.
> g.      Pot-of-gold.
> h.      A video game based on or involving the random or chance matching of different pictures, words, numbers, or symbols not dependent on the skill or dexterity of the player.

> i. Any other video game not dependent on skill or dexterity that is played while revealing a prize as the result of an entry into a sweepstakes.

N.C.G.S. § 14-306.4(a)(3).

¶ 18 In *Sandhill*, this Court adopted then-Judge Ervin's opinion dissenting from the majority opinion of the Court of Appeals. *Sandhill Amusements, Inc. v. Miller*, 368 N.C. 91 (2015). In his dissenting opinion, Judge Ervin reasoned that "given that [plaintiffs'] equipment and activities . . . clearly involve the use of electronic devices to engage in or simulate game play based upon which a participant may win or become eligible to win a prize, the only basis upon which [p]laintiffs' equipment and activities can avoid running afoul of [N.C.G.S.] § 14-306.4(b) is in the event that the game or simulated game involved is 'dependent on skill or dexterity.' " *Sandhill*, 236 N.C. App. at 365 (Ervin, J., dissenting). In adopting the dissenting opinion, therefore, this Court necessarily held that sweepstakes conducted through an "entertaining display" under the statute is only prohibited when the game or simulated game is not "dependent on skill or dexterity."

¶ 19 The majority opinion below, however, held that it "need not decide whether these sweepstakes are chance or skill-based in order to hold that they violate N.C.G.S. § 14-306.4," noting that "[r]*egardless of whether it is dependent on skill or dexterity*, a video sweepstakes falls within the entertaining display prohibition simply if it is 'visual information, capable of being seen by a sweepstakes entrant, that takes the

form of actual game play, or simulated game play[.]' " *Gift Surplus*, 268 N.C. App. at

4–5 (emphasis added) (quoting N.C.G.S. § 14-306.4(a)(3)). It based its interpretation

on the fact that the list of prohibited games in the definition of "entertaining display"

in N.C.G.S. § 14-306.4(a)(3) was set out "by way of illustration and not exclusion."

¶ 20      We conclude that the majority erred in this interpretation of the sweepstakes

statute. Although the list in question was not intended to be exhaustive, the list of

types of game play included in the statute, including poker and other card games,

bingo, and craps, contemplates only games of chance. Any doubt about whether the

statute is only concerned with games of chance is resolved by subsection (i), the

statute's "catch-all provision," *see Hest*, 366 N.C. at 292, which prohibits sweepstakes

through "[a]ny other video game not dependent on skill or dexterity . . . ." The canon

of construction *ejusdem generis* provides that "where general words follow a

designation of particular subjects or things, the meaning of the general words should

be construed as including only things of the same kind, character, and nature as those

specifically enumerated." *Smith v. Smith*, 314 N.C. 80, 87 (1985). Applying this

principle to the catch-all provision, the logical implication of this provision is that the

other games listed are also games "not dependent on skill or dexterity" and that only

sweepstakes conducted through video games of chance are prohibited under N.C.G.S.

§ 14-306.4. In other words, the majority erred in concluding that the non-

exhaustiveness of the list meant that the only limitation on other games being

included was that they must be video games and not that they must be *games of chance*. In doing so, the majority directly contravened the dissenting opinion in *Sandhill* that this Court adopted as its own, which held that a sweepstakes is not conducted through an electronic display when it involves a game or simulated game "dependent on skill or dexterity." *Sandhill*, 236 N.C. App. at 365. Accordingly, we reaffirm our prior holding that N.C.G.S. § 14-306.4 prohibits sweepstakes conducted "through the use of an entertaining display," but only when the electronic display "takes the form of actual game play, or simulated game play" where the game in question is "not dependent on skill or dexterity." N.C.G.S. § 14-306.4(a)(3); *see Sandhill*, 236 N.C. App. at 365.

The question, then, is not whether plaintiffs' new game is conducted through an electronic display, but whether the video game is "not dependent on skill or dexterity." In *Sandhill*, by adopting the dissenting opinion, we held that this reference to skill and dexterity incorporates "the traditional distinction between a game of skill and a game of chance pursuant to state law" such that it prohibits sweepstakes conducted through video games in which "chance predominates over skill." *Sandhill*, 236 N.C. App. at 368. In *Sandhill*, relying on the Court of Appeals' prior decision in *Collins Coin*, Judge Ervin reasoned that "[a] game of chance is such a game as is determined entirely or in part by lot or mere luck, and in which judgment, practice, skill or adroitness have honestly no office at all, or are thwarted

by chance"; that "[a] game of skill, on the other hand, is one in which nothing is left to chance, but superior knowledge and attention, or superior strength, agility and practice gain the victory"; and, accordingly, that "[i]t would seem that the test of the character of any kind of a game . . . as to whether it is a game of chance or a game of skill is not whether it contains an element of chance or an element of skill, but which of these is the dominating element that determines the result of the game, to be found from the facts of each kind of game," or, "to speak alternatively, whether or not the element of chance is present in such a manner as to thwart the exercise of skill or judgment." *Sandhill*, 236 N.C. App. at 368 (quoting *Collins Coin Music Co.*, 117 N.C. App. 405, 408 (1994)) (cleaned up). In *Crazie Overstock Promotions, LLC v. State*, argued the same day as this case, we summarized the predominant-factor test under N.C.G.S. § 14-306.4 based on this caselaw as follows:

> [T]he relevant test for use in determining whether the operation of an electronic gaming device does or does not violate N.C.G.S. § 14-306.4(a) is whether, viewed in its entirety, the results produced by that equipment in terms of whether the player wins or loses and the relative amount of the player's winnings or losses varies primarily with the vagaries of chance or the extent of the player's skill and dexterity.

377 N.C. 391, 2021-NCSC-57, ¶ 23. We reaffirm that the predominant-factor test is the applicable test for determining whether a video sweepstakes is conducted through a game of chance as prohibited under N.C.G.S. § 14-306.4.

**B. The Standard of Review for the Predominant-Factor Test**

¶ 22    Plaintiffs argue that defendants and Judge Collins's concurring opinion propose the wrong standard of review in applying the predominant-factor test under N.C.G.S. § 14-306.4. Specifically, plaintiffs argue that "[a] factfinder's determination as to whether a game complies with the predominant-factor test is reviewed deferentially." Plaintiffs contend "the proper standard of review of a trial court's predominance analysis in a bench trial would be whether competent evidence supports the factfinder's determination that skill or dexterity predominate over chance in a particular game." Plaintiffs argue that "because the factfinder, whether judge or jury, is in the best position to conduct the balance or 'weighing' required by the predominant-factor test, the *application* of that legal standard is a factual issue entitled to deference."

¶ 23    Defendants in turn argue, citing *State v. Gupton*, 30 N.C. 271 (1848), that the question of whether a game is a game of skill or a game of chance—that is, the question of whether chance or skill predominates under the predominant-factor test—is a mixed question of law and fact, and, citing *Gupton* and *Best v. Duke University*, 337 N.C. 742, 750 (1994), that "mixed questions like these are reviewed de novo where, as here, there is no factual dispute about how a game is played." Moreover, defendants note that while findings of fact from a bench trial are reviewed for substantial evidence, an appellate court conducts "de novo review of a conclusion

of law that the trial court [has] mislabeled as a finding of fact." *Farm Bureau v. Cully's Motorcross Park*, 366 N.C. 505, 512 (2013).

¶ 24        In neither *Sandhill* nor *Crazie Overstock*, our Court's recent cases applying N.C.G.S. § 14-306.4, did we expressly state the standard of review exercised by appellate courts in evaluating a trial court's determination of whether chance or skill predominates in a game under that statute. However, in both cases, our Court did not defer to the trial court's conclusion as to whether chance or skill predominated in the game but freely substituted its own judgment based on the undisputed evidence. *See Sandhill*, 236 N.C. App. at 370 ("As a result, . . . I am compelled by the undisputed evidence to conclude that the element of chance dominates the element of skill in the operation of Plaintiffs' machines." (cleaned up)); *Crazie Overstock, LLC*, 2021-NCSC-57 ¶ 25 (holding based on the undisputed evidence that "chance necessarily predominates over the exercise of skill or dexterity" in the plaintiff's game). Accordingly, we hold that whether chance or skill predominates in a given game is a mixed question of fact and law and is therefore reviewed de novo when there is no factual dispute about how a game is played. *See Best*, 337 N.C. at 750. This approach is consistent with *Gupton*, our first decision enunciating and applying the predominant-factor test to a game of "ten pins," or modern-day bowling, where Chief Justice Ruffin, speaking for the Court, reviewed de novo the trial court's determination that the indictment adequately alleged a "game of chance" prohibited

by our criminal laws and held that skill predominated over chance in the game. *See Gupton*, 30 N.C. at 275.

### C. Application of the Predominant-Factor Test

¶ 25        Having determined that the predominant-factor test will properly determine whether plaintiffs' video sweepstakes is conducted through a game of chance as prohibited by N.C.G.S. § 14-306.4 and that the question of whether chance or skill predominates in plaintiffs' new game is a mixed question of fact and law, we must now apply the predominant-factor test to the undisputed facts of plaintiffs' new game to determine whether plaintiffs' game is a game of chance. The question is "whether, viewed in its entirety, the results produced by [plaintiffs'] equipment in terms of whether the player wins or loses and the relative amount of the player's winnings or losses varies primarily with the vagaries of chance or the extent of the player's skill and dexterity." *Crazie Overstock, LLC*, 377 N.C. 391, 2021-NCSC-57, ¶ 23.

¶ 26        In *Sandhill*, the dissenting opinion adopted by this Court held that chance predominated over skill and dexterity in plaintiffs' game as then constituted because (1) "the machine and equipment at issue . . . only permitted a predetermined number of winners," (2) "use of the equipment . . . will result in the playing of certain games in which the player will be unable to win anything of value regardless of the skill or dexterity that he or she displays," (3) "the extent to which the opportunity arises for the 'nudging' activity . . . appears to be purely chance-based," and (4) even assuming

"nudging" a symbol in one direction or another involves skill or dexterity, "this isolated opportunity for such consideration to affect the outcome [does not] override[] the impact of the other features" of plaintiffs' game. *Sandhill*, 236 N.C. App. at 369.

Since our reversal of the preliminary injunction in *Sandhill*, plaintiffs contend that they have modified their game in two ways that support the trial court's determination that chance does not predominate over skill or dexterity such that plaintiffs' new game is not a game of chance and avoids the reach of N.C.G.S. § 14-306.4. First, plaintiffs argue its new game "contains a 'winner-every-time' feature" allowing every player who "nudges" the slot "to claim a monetary prize of some amount." Second, plaintiffs argue "the 'double nudge' feature increases the amount of skill and dexterity required in the redesigned sweepstakes games."

Defendants, in contrast, argue that plaintiffs' new game, like its original game, is "similar to traditional reel-spinning slot machines," and, like the role of chance in slot machines and poker, "chance controls the symbols that appear for players to nudge." Defendants contend that plaintiffs' two new modifications do not fundamentally alter the character of plaintiffs' game and cause skill or dexterity to predominate over chance such that our holding in *Sandhill* as to plaintiffs' original game no longer applies.

We first consider the change plaintiffs call a " 'winner-every-time' feature." In the original game, in 75% of turns a player took, the reels did not align so that a

nudge could nudge them into place and no prize could be won at all. In plaintiffs' new game, on 75% of turns a "¢" symbol appears one "nudge" from the middle row. If the player nudges the ¢ symbol to the middle row, they now receive a nominal prize of some cents.

¶ 30 We hold the purported "winner-every-time" feature does not alter plaintiffs' game such that chance does not predominate over skill or dexterity. On 75% of turns players of plaintiffs' games will still have no opportunity to compete for the largest possible prize of $2400. Plaintiffs argue that "the sweepstakes statute does not discriminate among different cash prizes," and "money has value" irrespective of how little it is. N.C.G.S. § 14-306.4(a)(4) defines a "prize" as "any gift, award, gratuity, good, service, credit, or anything else of value. . ." But this definition has no bearing on whether the game in which the putative prize is awarded is "not dependent on skill or dexterity." N.C.G.S. § 14-306.4(a)(3). If chance determines the prizes for which players may play, then, as in the case of traditional slot machines, "the return to the player is . . . dependent on . . . chance." *State v. Abbott*, 218 N.C. 470, 479 (1940).

¶ 31 We next consider the "double-nudge" modification which, plaintiffs argue, "increases the amount of skill and dexterity required in the redesigned sweepstakes games." In the original games, two of the reels would automatically align and the third reel would show a symbol one tick out of alignment such that the player had to press a button to "nudge" the symbol once up or down into alignment to win a prize.

¶ 32    In *Sandhill*, Judge Ervin assumed arguendo that "nudging" a symbol up or down into alignment involved skill or dexterity. On remand, the trial court concluded nudging involved skill because "data from actual game play in the field and data from lab tests, both regarding the single-nudge-only games, reveal error rates that show the games are dependent on skill." The trial court also concluded the game involved dexterity because the games required both "fine motor control of the hands and visual accuracy" and "the ability to recognize and implement winning patterns" based on playing the game and the lab data. Finally, the trial court concluded the double-nudge modification increased the amount of skill and dexterity "[b]ecause the [player] must evaluate the game to determine the number of nudges required and then take the required action (one nudge or two separate nudges)."

¶ 33    Contrary to the trial court's conclusion that plaintiffs' games involve skill and dexterity, we cannot conclude based on the undisputed record evidence that skill and dexterity have any more than a *de minimis* role in plaintiffs' new games, whether they are required to make one or two "nudges" of the reels. Plaintiffs' own expert, whose testimony concerning error data from lab tests is the basis for the trial court's conclusion that nudging involved skill and dexterity, testified that, for the single-nudge game, players correctly nudged the reel into place between 86% and 90% of the time. While the trial court infers that the error rate for double nudging involves more skill and dexterity, that inference is by no means warranted. A game need not be won

100% of the time for there to be nothing more than a minimal level of skill or dexterity involved, and undisputed evidence shows that the skill and dexterity involved is essentially *de minimis*.

¶ 34        In applying the predominant-factor test, we view plaintiffs' game in the entirety. In *Hest*, we observed that "the Court will inquire, not into the name, but into the game, however skillfully disguised, in order to ascertain if it is prohibited." *Hest*, 366 N.C. at 289. This approach is confirmed by N.C.G.S. § 14-306.4, which clarifies that "[i]t is the intent of this section to prohibit any mechanism that seeks to avoid application of this section through the use of any subterfuge or pretense whatsoever." N.C.G.S. § 14-306.4(c).

¶ 35        Here, chance controls plaintiffs' game by determining that in 75% of turns, players will not be eligible to play for the top prize and, indeed, cannot play for anything more than mere cents. Accordingly, just as is the case with a traditional slot machine, the return to the player in plaintiffs' game is dependent on chance. *Abbott*, 218 N.C. at 479. Nothing about the "nudge" (or even a "double nudge") obviates this fundamental aspect of plaintiffs' game. First, the skill and dexterity required to "nudge" a reel up or down is *de minimis*. More fundamentally, even assuming there was a meaningful level of skill or dexterity involved in the game, chance would always predominate because, when chance determines the relative winnings for which a player is able to play, chance "can override or thwart the exercise of skill." *Sandhill*,

236 N.C. App. at 369. As in *Crazie Overstock, LLC*, "the extent to which a customer is able to win more than a minimal amount of money is controlled by the outcome of [Plaintiffs' games' initial reel spin] regardless of the level of skill and dexterity that the player displays while participating in [nudging the reels]. *Crazie Overstock, LLC*, 2021-NCSC-57, ¶25. This situation is also analogous to the game of poker, which, despite involving a much greater level of skill, the Court of Appeals has held to be a game of chance because the drawing of "cards . . . at random" causes chance to predominate over skill. *Collins Coin*, 117 N.C. App. at 409; *accord Joker Club, L.L.C. v. Hardin*, 183 N.C. App. 92, 99 (2007) ("No amount of skill can change a deuce into an ace."). Here, the "winner-every-time" modification to permit a nominal award of a few cents and the "double-nudge" modification are nothing more than "thin and false apparel" over the plaintiffs' games that the law "will strip . . . [to] consider [the game] in its very nakedness."[3] *Hest*, 366 N.C. at 289 (citation omitted). After considering plaintiffs' game when "viewed in its entirety," we hold that "the results produced by [plaintiffs'] equipment in terms of whether the player wins or loses and the relative amount of the player's winnings or losses varies primarily with the vagaries of chance [and not] the extent of the player's skill and dexterity." *Crazie Overstock, LLC*, 2021-

---

[3] Indeed, as defendants note, there is no guarantee that the "double-nudge" and "winner-every-time" modifications on which plaintiffs rely would even be available in actual game play since operators of kiosks may disable them or not stock the machine with coins. In such cases, the games are the same ones we held to be illegal in *Sandhill*.

NCSC-57, ¶ 23. Accordingly, we hold that plaintiffs' game violates N.C.G.S. § 14-306.4(a)'s prohibition on sweepstakes conducted through video games of chance.

**D. Gambling**

Plaintiff further argues its game does not constitute illegal gambling under North Carolina's criminal code, while the State contends that it does. Since this Court holds that plaintiffs' conduct violates one aspect of our State's criminal code, we decline to reach this issue, which was also not reached by the Court of Appeals.

### III.    Conclusion

We conclude that in plaintiffs' new game, as in their game addressed in *Sandhill*, chance predominates over skill and, accordingly, it is a video game of chance prohibited by N.C.G.S. § 14-306.4. Because this holding is dispositive of the case, we need not address the other issues raised by the parties. Accordingly, we modify and affirm the opinion of the Court of Appeals.

MODIFIED AND AFFIRMED.

Justices ERVIN and BERGER did not participate in the consideration or decision of this case.