IN THE SUPREME COURT OF NORTH CAROLINA

 2022-NCSC-1

 No. 363A14-4

 Filed 11 February 2022

GIFT SURPLUS, LLC, and SANDHILL AMUSEMENTS, INC.,

Plaintiffs,

v.

STATE OF NORTH CAROLINA, ex rel. ROY COOPER, GOVERNOR, in his
official capacity, BRANCH HEAD OF THE ALCOHOL LAW ENFORCEMENT
BRANCH OF THE STATE BUREAU OF INVESTIGATION, MARK J. SENTER,
in his official capacity, SECRETARY OF THE NORTH CAROLINA
DEPARTMENT OF PUBLIC SAFETY, ERIK A. HOOKS, in his official capacity,
and DIRECTOR OF THE NORTH CAROLINA STATE BUREAU OF
INVESTIGATION, BOB SCHURMEIER, in his official capacity.

 On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision

of the Court of Appeals, 268 N.C. App. 1 (2019), reversing an order entered on 2

February 2018 by Judge Ebern T. Watson III, in the Superior Court, Onslow County.

Heard in the Supreme Court on 23 March 2021.

 Fox Rothschild LLP, by Elizabeth Brooks Scherer, Troy D. Shelton and Kip D.
 Nelson; Hyler & Agan PLLC, by George B. Hyler, Jr.; and Grace, Tisdale,
 Clifton, P.A., by Michael A. Grace for plaintiff-appellants.

 Joshua Stein, Attorney General, by James W. Doggett, Deputy Solicitor
 General, Olga Vysotskaya de Brito, Special Deputy Attorney General, and Ryan
 Y. Park, Solicitor General, for the State.

 Edmond W. Caldwell, Jr. and Matthew L. Boyatt, for North Carolina Sheriffs’
 Association; Fred P. Baggett for North Carolina Association of Chiefs of Police;
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

 and Jim O’Neill for North Carolina Conference of District Attorneys, amici
 curiae.

 HUDSON, Justice.

¶1 Gift Surplus, LLC, and Sandhill Amusements, Inc., (plaintiffs) sued Governor

 Roy Cooper and several state law enforcement officials (defendants) seeking a

 declaratory judgment that their operation of a sweepstakes through video game

 kiosks does not violate N.C.G.S. § 14-306.4, North Carolina’s criminal prohibition on

 certain video sweepstakes. This case presents the third time plaintiffs have appeared

 before this Court seeking to avoid liability under North Carolina’s ban on video

 sweepstakes. The question presented here is whether plaintiffs’ new game, as

 modified since plaintiffs last appeared before this Court, is not “dependent on skill or

 chance” and is thus criminalized by N.C.G.S. § 14-306.4 (2021), which prohibits the

 operation of sweepstakes conducted through video games of chance. As we held over

 one hundred years ago and reaffirmed when plaintiffs appeared before this Court

 challenging the video sweepstakes ban twelve years ago,

 [n]o sooner is a lottery defined, and the definition applied
 to a given state of facts, than ingenuity is at work to evolve
 some scheme of evasion which is within the mischief, but
 not quite within the letter of the definition. But, in this
 way, it is not possible to escape the law’s condemnation, for
 it will strip the transaction of all its thin and false apparel
 and consider it in its very nakedness. It will look to the
 substance and not to the form of it, in order to disclose its
 real elements and the pernicious tendencies which the law
 is seeking to prevent. The Court will inquire, not into the
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

 name, but into the game, however skillfully disguised, in
 order to ascertain if it is prohibited. It is the one playing at
 the game who is influenced by the hope enticingly held out,
 which is often false or disappointing, that he will, perhaps
 and by good luck, get something for nothing, or a great deal
 for a very little outlay. This is the lure that draws the
 credulous and unsuspecting into the deceptive scheme, and
 it is what the law denounces as wrong and demoralizing.

 Hest Techs., Inc. v. State ex rel. Perdue, 366 N.C. 289, 289 (2012) (quoting State v.

 Lipkin, 169 N.C. 265, 271 (1915)). After “inquir[ing], not into the name, but into the

 game, however skillfully disguised” of plaintiffs, we hold that chance predominates

 over skill in plaintiffs’ new game and, accordingly, that this game is a game of chance

 that violates the sweepstakes statute. Accordingly, we modify and affirm the decision

 of the Court of Appeals.

 I. Background

¶2 This case follows from the North Carolina General Assembly’s repeated efforts

 since 2006 to ban all video-gaming machines, including video poker and other video

 card games. Act of June 6, 2006, N.C. Sess. Law 2006-6, §§ 4, 12, 2006 N.C. Sess.

 Laws 4, 4–5, 7 (codified as amended at N.C.G.S. § 14-306.1A (2021)). Since this first

 prohibition was enacted, owners of video-gaming machines have developed machines

 with various interactive operations, in apparent efforts to circumvent the ban. See

 Hest, 366 N.C. at 291. In response to these perceived loopholes, the General Assembly

 enacted Session Law 2010-103, “An Act to Ban the Use of Electronic Machines and

 Devices for Sweepstakes Purposes,” codified at N.C.G.S. § 14-306.4. 2010 N.C. Sess.
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

 Laws Ch. 408. N.C.G.S. § 14-306.4 makes it illegal to “[c]onduct a sweepstakes

 through the use of an entertaining display.” N.C.G.S. § 14-306.4(b).1

¶3 Following enactment of the law, purveyors of video-game kiosks that were

 purportedly for sweepstakes challenged the law on First Amendment grounds. In

 Hest, this Court held that N.C.G.S. § 14-306.4 regulated conduct, with only incidental

 burdens on speech, and that the law was supported by a rational basis. 366 N.C. at

 303. One of the plaintiffs here, Sandhill Amusements, was among a group of vendor-

 plaintiffs in a related case making the same First Amendment argument, which was

 rejected by this Court for the reasons stated in Hest. Sandhill Amusements, Inc. v.

 State, 366 N.C. 323, 324 (2012) (per curiam). Although the record shows Sandhill has

 a long history as a video-gaming company, in that lawsuit it argued it was a business

 that sold long-distance phone time, merely using video sweepstakes to promote its

 service.

¶4 In 2013, shortly after our decision in Hest, Sandhill began operating and

 distributing video-gaming kiosks for sweepstakes for plaintiff Gift Surplus. Gift

 Surplus operates an e-commerce website, www.giftsurplus.com, but does not

 maintain an inventory of the products it advertises and instead buys products as

 necessary to fill orders as a drop shipping business.

 1 A fuller history of the General Assembly’s efforts to combat the circumvention of

 gambling laws is provided in Hest, 366 N.C. at 289–92.
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

¶5 In its business arrangement with Sandhill, Gift Surplus designs sweepstakes

 kiosks that it licenses to third-party operators like Sandhill. Sandhill places the

 kiosks into operation in convenience stores and retail establishments across North

 Carolina. The establishments are predominantly patronized by low-income

 customers, who Gift Surplus has identified as its target demographic.

¶6 Gift Surplus’s kiosks appear like large video-game machines that look akin to

 video slot machines. When players put money into the kiosks, they receive what

 appear to be paper receipts called “e-credits” that can be exchanged either for

 products on Gift Surplus’s drop shipping website or to play Gift Surplus’s phone

 games. Players also receive sweepstakes entries which can be used to immediately

 play games on the kiosks. The kiosks offer five similar games, all featuring reel-

 spinning video resembling a slot machine. When the game begins, the reels spin, but

 the three slots never come to a stop in a complete line. Instead, players always have

 to “nudge” the slots up or down so that three symbols align on the middle line. In the

 initial iteration of these games, players only had to nudge one symbol into place to

 win.

¶7 The game also limits the number of players who can win meaningful prizes.

 On 75% of turns, the player will never be able to play for the largest prize of $2400

 and, under the original setup, could win nothing.

¶8 Gift Surplus and Sandhill subsequently filed the present lawsuit, seeking a
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

 declaratory judgment and preliminary and permanent injunctive relief initially

 against the Sheriff of Onslow County and then against the Governor and the present

 state defendants. A trial court judge issued a preliminary injunction for plaintiffs,

 which defendants appealed.

¶9 A divided panel of the Court of Appeals dismissed the appeal in Sandhill

 Amusements, Inc. v. Sheriff of Onslow Cty., 236 N.C. App. 340 (2014), rev’d per

 curiam, Sandhill Amusements, Inc. v. Miller, 368 N.C. 91 (2015). Then-Judge Ervin

 dissented from the Court of Appeals majority, reasoning that plaintiffs could not show

 a likelihood of success on the merits at trial because chance predominated over skill

 in plaintiffs’ game and, accordingly, it violated N.C.G.S. § 14-306.4, so the

 preliminary injunction should have been denied. Id. at 369–70 (Ervin, J., dissenting).

 On appeal, this Court reversed the decision of the Court of Appeals and adopted the

 reasoning of Judge Ervin’s dissenting opinion. Sandhill Amusements, Inc. v. Miller,

 368 N.C. 91 (2015).

¶ 10 On remand to the trial court, Gift Surplus made two changes to its games.

 First, they added a “winner-every-time” modification, so that, on the 75% of turns on

 which users originally could not win any prize, retailers can set up the machine to

 award a token prize of a few cents. Second, Gift Surplus added a “double nudge”

 modification, so that instead of nudging one symbol to win, retailers could set up the

 machines to require players to nudge two symbols into place.
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

¶ 11 After a bench trial, the trial court held that the sweepstakes game is lawful,

 relying on the new modifications made since remand to conclude that, based on the

 amended complaint and with the modifications, skill predominates over chance in

 plaintiffs’ new game, unlike the game in Sandhill.

¶ 12 The trial court further concluded that the sale of Gift Surplus’s “e-credits” was

 not a pretext for gambling. At trial, defendants presented evidence that the receipt-

 like e-credits are often thrown away rather than being redeemed in the online store

 or phone games. An officer in the Brunswick County Sheriff’s Office testified that he

 visited an establishment and observed players at the kiosks throw e-credits away

 and, after searching the trash, found over $10,000 of unused e-credit receipts.

¶ 13 Defendants appealed the trial court’s judgment to the Court of Appeals. At the

 Court of Appeals, the panel unanimously reversed the trial court judgment but issued

 three separate opinions. See Gift Surplus, LLC v. State ex rel. Cooper, 268 N.C. App.

 1 (2019). First, Judge Murphy, in an opinion joined by Judge Collins, held that, since

 plaintiffs’ new game was “visual information, capable of being seen by a sweepstakes

 entrant, that takes the form of actual game play, or simulated game play,” the

 sweepstakes was conducted through an “entertaining display,” regardless of whether

 the game was a game of chance or not. Id. at 4–5. Judge Bryant concurred in the

 result and would have required that the game not depend on skill or dexterity and

 held that “the games at issue do not amount to games whose outcomes are determined
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

 by skill and dexterity, but rather, chance.” Id. at 13 (Bryant, J., concurring in the

 result). Judge Collins joined fully with Judge Murphy’s opinion, but wrote a separate

 opinion reasoning that “[t]o the extent our Supreme Court’s adoption of Judge Ervin’s

 dissent in Sandhill signals the Court’s determination that a sweepstakes game falls

 within [N.C.G.S.] § 14-306.4’s “entertaining display” prohibition only when the video

 game is not dependent on skill or dexterity, I agree with Judge Bryant’s concurring

 opinion in this case . . .” Id. at 6–7 (Collins, J., concurring). Since the Court of Appeals

 held plaintiffs’ new game violated N.C.G.S. § 14-306.4, it declined to reach the

 separate question of whether it also violated North Carolina’s prohibition on

 gambling. Id. at 5.

¶ 14 Plaintiffs filed a notice of appeal based on a constitutional question, which this

 Court dismissed, and a petition for discretionary review, which was allowed.

 Defendants filed a conditional petition for discretionary review, which was also

 allowed.

 II. Analysis

¶ 15 On appeal, plaintiffs first argue the Court of Appeals erred by applying a new

 legal standard for claims under the video sweepstakes statute rather than the

 predominant-factor test. Second, plaintiffs argue the application of the predominant-

 factor test is reviewed deferentially rather than de novo. Third, plaintiffs argue that,

 under the predominant-factor test, the trial court correctly determined that chance
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

 did not predominate over skill in plaintiffs’ new game and Judge Collins in her

 concurring opinion at the Court of Appeals erred in stating otherwise., plaintiffs

 argue that their new game does not constitute gambling. We consider plaintiffs’

 arguments in turn.

 A. The Predominant-Factor Test Under N.C.G.S. § 14-306.4

¶ 16 Plaintiffs first argue the majority opinion below erred in failing to apply the

 predominant-factor test under N.C.G.S. § 14-306.4 as applied in then-Judge Ervin’s

 dissent in Sandhill and as adopted by this Court. Defendants do not argue for the

 majority’s holding that it is not necessary to decide whether games “are chance or

 skill-based.” Gift Surplus, 268 N.C. App. at 4. We agree and hold that the majority

 opinion erred in failing to consider whether skill or chance predominates in the game

 under the sweepstakes statute as interpreted by this Court’s prior decision in

 Sandhill.2

 2 Plaintiffs argue the majority erred in failing to apply the predominant-factor test for

 a myriad of procedural reasons, including that the Court of Appeals “swapped horses on
 appeal” for the appellant, that it violated the law-of-the-case doctrine, that defendants failed
 to make that argument before the trial court and so abandoned it under North Carolina Rule
 of Appellate Procedure 10, that even if properly raised defendants abandoned the argument
 on appeal under Appellate Rule 28(b)(6), that adopting a theory not argued offends notions
 of equity and fundamental fairness, and, taken together, violation of these doctrines
 contravenes the “principle of party presentation” recently enunciated by the Supreme Court
 of the United States. See United States v. Sineneng-Smith, 140 S. Ct. 1575, 1578–89 (2020).
 While the majority opinion’s discarding of the predominant-factor test in interpreting
 N.C.G.S. § 14-306.4 in favor of a theory not advanced by any party was doubtless procedurally
 improper, we need not reach these issues to hold that the majority below erred because it
 contravened binding precedent of this Court in Sandhill. See Cannon v. Miller, 313 N.C. 324,
 324 (1985) (holding the Court of Appeals has no authority to overrule decisions of this Court).
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

¶ 17 North Carolina’s criminal code prohibits sweepstakes conducted through

 electronic machines using video games of chance. This prohibition was codified at

 N.C.G.S. § 14-306.4, entitled “Electronic machines and devices for sweepstakes

 prohibited.” Under this statute, a sweepstakes is defined as “any game, advertising

 scheme or plan, or other promotion, which, with or without payment of any

 consideration, a person may enter to win or become eligible to receive any prize, the

 determination of which is based upon chance.” N.C.G.S. § 14-306.4(a)(5). N.C.G.S. §

 14-306.4(b) provides that “it shall be unlawful for any person to operate, or place into

 operation, an electronic machine or device to . . . [c]onduct a sweepstakes through the

 use of an entertaining display, including the entry process or the reveal of a prize.”

 N.C.G.S. § 14-306(b), (b)(1) (2019). The statute defines “entertaining display” as

 follows:

 [V]isual information, capable of being seen by a
 sweepstakes entrant, that takes the form of actual game
 play, or simulated game play, such as, by way of
 illustration and not exclusion:
 a. A video poker game or any other kind of video
 playing card game.
 b. A video bingo game.
 c. A video craps game.
 d. A video keno game.
 e. A video lotto game.
 f. Eight liner.
 g. Pot-of-gold.
 h. A video game based on or involving the random or
 chance matching of different pictures, words,
 numbers, or symbols not dependent on the skill or
 dexterity of the player.
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

 i. Any other video game not dependent on skill or
 dexterity that is played while revealing a prize as
 the result of an entry into a sweepstakes.

 N.C.G.S. § 14-306.4(a)(3).

¶ 18 In Sandhill, this Court adopted then-Judge Ervin’s opinion dissenting from

 the majority opinion of the Court of Appeals. Sandhill Amusements, Inc. v. Miller,

 368 N.C. 91 (2015). In his dissenting opinion, Judge Ervin reasoned that “given that

 [plaintiffs’] equipment and activities . . . clearly involve the use of electronic devices

 to engage in or simulate game play based upon which a participant may win or

 become eligible to win a prize, the only basis upon which [p]laintiffs’ equipment and

 activities can avoid running afoul of [N.C.G.S.] § 14-306.4(b) is in the event that the

 game or simulated game involved is ‘dependent on skill or dexterity.’ ” Sandhill, 236

 N.C. App. at 365 (Ervin, J., dissenting). In adopting the dissenting opinion, therefore,

 this Court necessarily held that sweepstakes conducted through an “entertaining

 display” under the statute is only prohibited when the game or simulated game is not

 “dependent on skill or dexterity.”

¶ 19 The majority opinion below, however, held that it “need not decide whether

 these sweepstakes are chance or skill-based in order to hold that they violate N.C.G.S.

 § 14-306.4,” noting that “[r]egardless of whether it is dependent on skill or dexterity, a

 video sweepstakes falls within the entertaining display prohibition simply if it is

 ‘visual information, capable of being seen by a sweepstakes entrant, that takes the
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

 form of actual game play, or simulated game play[.]’ ” Gift Surplus, 268 N.C. App. at

 4–5 (emphasis added) (quoting N.C.G.S. § 14-306.4(a)(3)). It based its interpretation

 on the fact that the list of prohibited games in the definition of “entertaining display”

 in N.C.G.S. § 14-306.4(a)(3) was set out “by way of illustration and not exclusion.”

¶ 20 We conclude that the majority erred in this interpretation of the sweepstakes

 statute. Although the list in question was not intended to be exhaustive, the list of

 types of game play included in the statute, including poker and other card games,

 bingo, and craps, contemplates only games of chance. Any doubt about whether the

 statute is only concerned with games of chance is resolved by subsection (i), the

 statute’s “catch-all provision,” see Hest, 366 N.C. at 292, which prohibits sweepstakes

 through “[a]ny other video game not dependent on skill or dexterity . . . .” The canon

 of construction ejusdem generis provides that “where general words follow a

 designation of particular subjects or things, the meaning of the general words should

 be construed as including only things of the same kind, character, and nature as those

 specifically enumerated.” Smith v. Smith, 314 N.C. 80, 87 (1985). Applying this

 principle to the catch-all provision, the logical implication of this provision is that the

 other games listed are also games “not dependent on skill or dexterity” and that only

 sweepstakes conducted through video games of chance are prohibited under N.C.G.S.

 § 14-306.4. In other words, the majority erred in concluding that the non-

 exhaustiveness of the list meant that the only limitation on other games being
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

 included was that they must be video games and not that they must be games of

 chance. In doing so, the majority directly contravened the dissenting opinion in

 Sandhill that this Court adopted as its own, which held that a sweepstakes is not

 conducted through an electronic display when it involves a game or simulated game

 “dependent on skill or dexterity.” Sandhill, 236 N.C. App. at 365. Accordingly, we

 reaffirm our prior holding that N.C.G.S. § 14-306.4 prohibits sweepstakes conducted

 “through the use of an entertaining display,” but only when the electronic display

 “takes the form of actual game play, or simulated game play” where the game in

 question is “not dependent on skill or dexterity.” N.C.G.S. § 14-306.4(a)(3); see

 Sandhill, 236 N.C. App. at 365.

¶ 21 The question, then, is not whether plaintiffs’ new game is conducted through

 an electronic display, but whether the video game is “not dependent on skill or

 dexterity.” In Sandhill, by adopting the dissenting opinion, we held that this

 reference to skill and dexterity incorporates “the traditional distinction between a

 game of skill and a game of chance pursuant to state law” such that it prohibits

 sweepstakes conducted through video games in which “chance predominates over

 skill.” Sandhill, 236 N.C. App. at 368. In Sandhill, relying on the Court of Appeals’

 prior decision in Collins Coin, Judge Ervin reasoned that “[a] game of chance is such

 a game as is determined entirely or in part by lot or mere luck, and in which

 judgment, practice, skill or adroitness have honestly no office at all, or are thwarted
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

by chance”; that “[a] game of skill, on the other hand, is one in which nothing is left

to chance, but superior knowledge and attention, or superior strength, agility and

practice gain the victory”; and, accordingly, that “[i]t would seem that the test of the

character of any kind of a game . . . as to whether it is a game of chance or a game of

skill is not whether it contains an element of chance or an element of skill, but which

of these is the dominating element that determines the result of the game, to be found

from the facts of each kind of game,” or, “to speak alternatively, whether or not the

element of chance is present in such a manner as to thwart the exercise of skill or

judgment.” Sandhill, 236 N.C. App. at 368 (quoting Collins Coin Music Co., 117 N.C.

App. 405, 408 (1994)) (cleaned up). In Crazie Overstock Promotions, LLC v. State,

argued the same day as this case, we summarized the predominant-factor test under

N.C.G.S. § 14-306.4 based on this caselaw as follows:

 [T]he relevant test for use in determining whether the
 operation of an electronic gaming device does or does not
 violate N.C.G.S. § 14-306.4(a) is whether, viewed in its
 entirety, the results produced by that equipment in terms
 of whether the player wins or loses and the relative amount
 of the player’s winnings or losses varies primarily with the
 vagaries of chance or the extent of the player’s skill and
 dexterity.

377 N.C. 391, 2021-NCSC-57, ¶ 23. We reaffirm that the predominant-factor test is

the applicable test for determining whether a video sweepstakes is conducted through

a game of chance as prohibited under N.C.G.S. § 14-306.4.
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

 B. The Standard of Review for the Predominant-Factor Test

¶ 22 Plaintiffs argue that defendants and Judge Collins’s concurring opinion

 propose the wrong standard of review in applying the predominant-factor test under

 N.C.G.S. § 14-306.4. Specifically, plaintiffs argue that “[a] factfinder’s determination

 as to whether a game complies with the predominant-factor test is reviewed

 deferentially.” Plaintiffs contend “the proper standard of review of a trial court’s

 predominance analysis in a bench trial would be whether competent evidence

 supports the factfinder’s determination that skill or dexterity predominate over

 chance in a particular game.” Plaintiffs argue that “because the factfinder, whether

 judge or jury, is in the best position to conduct the balance or ‘weighing’ required by

 the predominant-factor test, the application of that legal standard is a factual issue

 entitled to deference.”

¶ 23 Defendants in turn argue, citing State v. Gupton, 30 N.C. 271 (1848), that the

 question of whether a game is a game of skill or a game of chance—that is, the

 question of whether chance or skill predominates under the predominant-factor

 test—is a mixed question of law and fact, and, citing Gupton and Best v. Duke

 University, 337 N.C. 742, 750 (1994), that “mixed questions like these are reviewed

 de novo where, as here, there is no factual dispute about how a game is played.”

 Moreover, defendants note that while findings of fact from a bench trial are reviewed

 for substantial evidence, an appellate court conducts “de novo review of a conclusion
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

 of law that the trial court [has] mislabeled as a finding of fact.” Farm Bureau v. Cully’s

 Motorcross Park, 366 N.C. 505, 512 (2013).

¶ 24 In neither Sandhill nor Crazie Overstock, our Court’s recent cases applying

 N.C.G.S. § 14-306.4, did we expressly state the standard of review exercised by

 appellate courts in evaluating a trial court’s determination of whether chance or skill

 predominates in a game under that statute. However, in both cases, our Court did

 not defer to the trial court’s conclusion as to whether chance or skill predominated in

 the game but freely substituted its own judgment based on the undisputed evidence.

 See Sandhill, 236 N.C. App. at 370 (“As a result, . . . I am compelled by the undisputed

 evidence to conclude that the element of chance dominates the element of skill in the

 operation of Plaintiffs’ machines.” (cleaned up)); Crazie Overstock, LLC, 2021-NCSC-

 57 ¶ 25 (holding based on the undisputed evidence that “chance necessarily

 predominates over the exercise of skill or dexterity” in the plaintiff’s game).

 Accordingly, we hold that whether chance or skill predominates in a given game is a

 mixed question of fact and law and is therefore reviewed de novo when there is no

 factual dispute about how a game is played. See Best, 337 N.C. at 750. This approach

 is consistent with Gupton, our first decision enunciating and applying the

 predominant-factor test to a game of “ten pins,” or modern-day bowling, where Chief

 Justice Ruffin, speaking for the Court, reviewed de novo the trial court’s

 determination that the indictment adequately alleged a “game of chance” prohibited
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

 by our criminal laws and held that skill predominated over chance in the game. See

 Gupton, 30 N.C. at 275.

 C. Application of the Predominant-Factor Test

¶ 25 Having determined that the predominant-factor test will properly determine

 whether plaintiffs’ video sweepstakes is conducted through a game of chance as

 prohibited by N.C.G.S. § 14-306.4 and that the question of whether chance or skill

 predominates in plaintiffs’ new game is a mixed question of fact and law, we must

 now apply the predominant-factor test to the undisputed facts of plaintiffs’ new game

 to determine whether plaintiffs’ game is a game of chance. The question is “whether,

 viewed in its entirety, the results produced by [plaintiffs’] equipment in terms of

 whether the player wins or loses and the relative amount of the player’s winnings or

 losses varies primarily with the vagaries of chance or the extent of the player’s skill

 and dexterity.” Crazie Overstock, LLC, 377 N.C. 391, 2021-NCSC-57, ¶ 23.

¶ 26 In Sandhill, the dissenting opinion adopted by this Court held that chance

 predominated over skill and dexterity in plaintiffs’ game as then constituted because

 (1) “the machine and equipment at issue . . . only permitted a predetermined number

 of winners,” (2) “use of the equipment . . . will result in the playing of certain games

 in which the player will be unable to win anything of value regardless of the skill or

 dexterity that he or she displays,” (3) “the extent to which the opportunity arises for

 the ‘nudging’ activity . . . appears to be purely chance-based,” and (4) even assuming
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

 “nudging” a symbol in one direction or another involves skill or dexterity, “this

 isolated opportunity for such consideration to affect the outcome [does not] override[]

 the impact of the other features” of plaintiffs’ game. Sandhill, 236 N.C. App. at 369.

¶ 27 Since our reversal of the preliminary injunction in Sandhill, plaintiffs contend

 that they have modified their game in two ways that support the trial court’s

 determination that chance does not predominate over skill or dexterity such that

 plaintiffs’ new game is not a game of chance and avoids the reach of N.C.G.S. § 14-

 306.4. First, plaintiffs argue its new game “contains a ‘winner-every-time’ feature”

 allowing every player who “nudges” the slot “to claim a monetary prize of some

 amount.” Second, plaintiffs argue “the ‘double nudge’ feature increases the amount of

 skill and dexterity required in the redesigned sweepstakes games.”

¶ 28 Defendants, in contrast, argue that plaintiffs’ new game, like its original game,

 is “similar to traditional reel-spinning slot machines,” and, like the role of chance in

 slot machines and poker, “chance controls the symbols that appear for players to

 nudge.” Defendants contend that plaintiffs’ two new modifications do not

 fundamentally alter the character of plaintiffs’ game and cause skill or dexterity to

 predominate over chance such that our holding in Sandhill as to plaintiffs’ original

 game no longer applies.

¶ 29 We first consider the change plaintiffs call a “ ‘winner-every-time’ feature.” In

 the original game, in 75% of turns a player took, the reels did not align so that a
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

 nudge could nudge them into place and no prize could be won at all. In plaintiffs’ new

 game, on 75% of turns a “¢” symbol appears one “nudge” from the middle row. If the

 player nudges the ¢ symbol to the middle row, they now receive a nominal prize of

 some cents.

¶ 30 We hold the purported “winner-every-time” feature does not alter plaintiffs’

 game such that chance does not predominate over skill or dexterity. On 75% of turns

 players of plaintiffs’ games will still have no opportunity to compete for the largest

 possible prize of $2400. Plaintiffs argue that “the sweepstakes statute does not

 discriminate among different cash prizes,” and “money has value” irrespective of how

 little it is. N.C.G.S. § 14-306.4(a)(4) defines a “prize” as “any gift, award, gratuity,

 good, service, credit, or anything else of value. . .” But this definition has no bearing

 on whether the game in which the putative prize is awarded is “not dependent on

 skill or dexterity.” N.C.G.S. § 14-306.4(a)(3). If chance determines the prizes for which

 players may play, then, as in the case of traditional slot machines, “the return to the

 player is . . . dependent on . . . chance.” State v. Abbott, 218 N.C. 470, 479 (1940).

¶ 31 We next consider the “double-nudge” modification which, plaintiffs argue,

 “increases the amount of skill and dexterity required in the redesigned sweepstakes

 games.” In the original games, two of the reels would automatically align and the

 third reel would show a symbol one tick out of alignment such that the player had to

 press a button to “nudge” the symbol once up or down into alignment to win a prize.
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

¶ 32 In Sandhill, Judge Ervin assumed arguendo that “nudging” a symbol up or

 down into alignment involved skill or dexterity. On remand, the trial court concluded

 nudging involved skill because “data from actual game play in the field and data from

 lab tests, both regarding the single-nudge-only games, reveal error rates that show

 the games are dependent on skill.” The trial court also concluded the game involved

 dexterity because the games required both “fine motor control of the hands and visual

 accuracy” and “the ability to recognize and implement winning patterns” based on

 playing the game and the lab data. Finally, the trial court concluded the double-nudge

 modification increased the amount of skill and dexterity “[b]ecause the [player] must

 evaluate the game to determine the number of nudges required and then take the

 required action (one nudge or two separate nudges).”

¶ 33 Contrary to the trial court’s conclusion that plaintiffs’ games involve skill and

 dexterity, we cannot conclude based on the undisputed record evidence that skill and

 dexterity have any more than a de minimis role in plaintiffs’ new games, whether

 they are required to make one or two “nudges” of the reels. Plaintiffs’ own expert,

 whose testimony concerning error data from lab tests is the basis for the trial court’s

 conclusion that nudging involved skill and dexterity, testified that, for the single-

 nudge game, players correctly nudged the reel into place between 86% and 90% of the

 time. While the trial court infers that the error rate for double nudging involves more

 skill and dexterity, that inference is by no means warranted. A game need not be won
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

 100% of the time for there to be nothing more than a minimal level of skill or dexterity

 involved, and undisputed evidence shows that the skill and dexterity involved is

 essentially de minimis.

¶ 34 In applying the predominant-factor test, we view plaintiffs’ game in the

 entirety. In Hest, we observed that “the Court will inquire, not into the name, but into

 the game, however skillfully disguised, in order to ascertain if it is prohibited.” Hest,

 366 N.C. at 289. This approach is confirmed by N.C.G.S. § 14-306.4, which clarifies

 that “[i]t is the intent of this section to prohibit any mechanism that seeks to avoid

 application of this section through the use of any subterfuge or pretense whatsoever.”

 N.C.G.S. § 14-306.4(c).

¶ 35 Here, chance controls plaintiffs’ game by determining that in 75% of turns,

 players will not be eligible to play for the top prize and, indeed, cannot play for

 anything more than mere cents. Accordingly, just as is the case with a traditional slot

 machine, the return to the player in plaintiffs’ game is dependent on chance. Abbott,

 218 N.C. at 479. Nothing about the “nudge” (or even a “double nudge”) obviates this

 fundamental aspect of plaintiffs’ game. First, the skill and dexterity required to

 “nudge” a reel up or down is de minimis. More fundamentally, even assuming there

 was a meaningful level of skill or dexterity involved in the game, chance would always

 predominate because, when chance determines the relative winnings for which a

 player is able to play, chance “can override or thwart the exercise of skill.” Sandhill,
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

236 N.C. App. at 369. As in Crazie Overstock, LLC, “the extent to which a customer

is able to win more than a minimal amount of money is controlled by the outcome of

[Plaintiffs’ games’ initial reel spin] regardless of the level of skill and dexterity that

the player displays while participating in [nudging the reels]. Crazie Overstock, LLC,

2021-NCSC-57, ¶25. This situation is also analogous to the game of poker, which,

despite involving a much greater level of skill, the Court of Appeals has held to be a

game of chance because the drawing of “cards . . . at random” causes chance to

predominate over skill. Collins Coin, 117 N.C. App. at 409; accord Joker Club, L.L.C.

v. Hardin, 183 N.C. App. 92, 99 (2007) (“No amount of skill can change a deuce into

an ace.”). Here, the “winner-every-time” modification to permit a nominal award of a

few cents and the “double-nudge” modification are nothing more than “thin and false

apparel” over the plaintiffs’ games that the law “will strip . . . [to] consider [the game]

in its very nakedness.”3 Hest, 366 N.C. at 289 (citation omitted). After considering

plaintiffs’ game when “viewed in its entirety,” we hold that “the results produced by

[plaintiffs’] equipment in terms of whether the player wins or loses and the relative

amount of the player’s winnings or losses varies primarily with the vagaries of chance

[and not] the extent of the player’s skill and dexterity.” Crazie Overstock, LLC, 2021-

 3 Indeed, as defendants note, there is no guarantee that the “double-nudge” and
“winner-every-time” modifications on which plaintiffs rely would even be available in actual
game play since operators of kiosks may disable them or not stock the machine with coins.
In such cases, the games are the same ones we held to be illegal in Sandhill.
 GIFT SURPLUS, LLC V. STATE EX REL. COOPER

 2022-NCSC-1

 Opinion of the Court

 NCSC-57, ¶ 23. Accordingly, we hold that plaintiffs’ game violates N.C.G.S. § 14-

 306.4(a)’s prohibition on sweepstakes conducted through video games of chance.

 D. Gambling

¶ 36 Plaintiff further argues its game does not constitute illegal gambling under

 North Carolina’s criminal code, while the State contends that it does. Since this Court

 holds that plaintiffs’ conduct violates one aspect of our State’s criminal code, we

 decline to reach this issue, which was also not reached by the Court of Appeals.

 III. Conclusion

¶ 37 We conclude that in plaintiffs’ new game, as in their game addressed in

 Sandhill, chance predominates over skill and, accordingly, it is a video game of

 chance prohibited by N.C.G.S. § 14-306.4. Because this holding is dispositive of the

 case, we need not address the other issues raised by the parties. Accordingly, we

 modify and affirm the opinion of the Court of Appeals.

 MODIFIED AND AFFIRMED.

 Justices ERVIN and BERGER did not participate in the consideration or decision of
 this case.